84 N.J. Super. 599 (1964)
203 A.2d 131
SUSSLEAF-FLEMINGTON, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
MARTIN BRUCE, SYLVIA BRUCE, LEW SHULGASSER, AND OSWALD BESSER, JOINTLY AND SEVERALLY, AND KAPPA CONSTRUCTION CORP., A NEW YORK CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1964.
Decided July 2, 1964.
*600 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Arthur L. Abrams argued the cause for appellants.
Mr. Richard E. Cherin argued the cause for respondent (Messrs. Kristeller, Zucker, Lowenstein & Cohen, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Plaintiff brought this action to enjoin resort to arbitration by defendants in respect of a dispute *601 over an alleged breach of a long-term lease. It obtained a preliminary injunction. Defendants counterclaimed to compel arbitration under N.J.S. 2A:24-3; but the court denied their motion to order the arbitration, holding: (1) defendants presented no bona fide controversy for arbitration; (2) there was a preliminary question for decision by the court in relation to plaintiff's defense of laches against assertion of the cause of action for arbitration. We granted leave to appeal the denial of the motion for arbitration.
Plaintiff was the original builder and owner of a shopping center in Raritan Township. In February 1962 it sold the premises to defendants, taking back a long-term lease. There was then in existence an operating sublease for the entire premises to a subsidiary of Terry Shops, Inc., the performance of which was guaranteed by that corporation. The principal lease between the present parties provided that it was subject and subordinate to the Terry Shops lease mentioned "which said lease and guarantee thereof may not be cancelled, terminated or modified without the prior written consent of the Lessor [i.e., of principal lease]." By the principal lease the plaintiff also assigned the Terry Shops sublease to defendants as collateral security against breach of the principal lease by plaintiff.
Terry Shops and its subsidiary (the nominal sublessee) were adjudicated bankrupts on August 1, 1963, and their trustee promptly abandoned the lease under order of the bankruptcy court. On January 3, 1964 defendants served plaintiff with a demand for arbitration, asserting that the bankruptcy and abandonment of the sublease constituted a cancellation of that lease and the guarantee thereof by Terry Shops giving defendants the right to terminate plaintiff's lease under the terms of that instrument. They acted under a provision of the lease stating: "Controversies of any kind relating to this agreement shall, at the option of either party hereto, be settled by arbitration in New York, N.Y., in accordance with the rules then obtaining of the American Arbitration Association."
*602 Plaintiff refused to arbitrate, and brought this action instead. It claims that after the Terry Shops bankruptcy it entered into a new sublease with a responsible operator, spent substantial sums of money to reorganize the shopping center, and paid the rents due under the lease to defendants, all to the knowledge of defendants and without any claim or assertion of default by the latter until service of the demand for arbitration. It was on the basis of these facts that plaintiff asserted the defense of laches to the counterclaim for arbitration, alternatively casting the defense in terms of waiver and estoppel on the same factual premises.
We consider first plaintiff's contention that the dispute is not arbitrable. The argument is that defendants in effect are seeking to add terms to or to reform the contract, and New York cases are cited to support the argument that an arbitration clause is not applicable in such case, e.g., Agora Development Corporation v. Low, 19 A.D.2d 126, 241 N.Y. Supp.2d 126 (App. Div. 1963). That decision, however, stated that an arbitration clause would apply to a claimed right to reform the letter of the contract terms to conform with the asserted real agreement but held it inapplicable to a contention that the circumstances called (apparently as a matter of equity) for adding a new term to the contract. We need not decide whether a refinement of that nature would be held material in this State as against the holding of our own Supreme Court in Jersey Central Power & Light Co. v. Local Union No. 1289, etc., 38 N.J. 95 (1962), giving very broad scope to an arbitration clause. The present attempt by defendants is not to obtain an equitable recasting of the contract terms but a judicial determination that the cancellation of the Terry Shops sublease and guarantee, although by bankruptcy, warranted a cancellation of the major lease by the landlord under a proper construction of its provisions as written.
Plaintiff also argues that the arbitration claim is not founded upon a bona fide dispute. But that kind of contention has been declared unavailing any longer in Jersey Central Power & Light Co. v. Local Union No. 1289, etc., supra. *603 If the controversy is within the arbitration clause it is absolutely arbitrable whatever the apparent lack of substantive merit in the position of the demanding party. Id., at pp. 102-103. We find this controversy clearly within the broad language of the present arbitration clause.
Plaintiff's further contention that Jersey Central Power & Light is applicable only to collective bargaining agreements cannot be accepted. There is no intimation of such a limitation in the opinion of the Chief Justice; on principle, the functional considerations therein discussed are as germane to commercial as to labor agreements providing for arbitration of controversies arising thereunder.
A more substantial question arises, however, in relation to plaintiff's assertion that the order for arbitration was properly denied by the trial court for the reason that the court must first determine the defense of laches. There is solid authority for the view that since an application to a court to compel enforcement of an agreement to arbitrate is in the nature of an equity suit for specific performance of a contract, the equitable defense of laches is cognizable, and is for disposition by the court rather than the arbitrators. Reconstruction Finance Corp. v. Harrison & Crosfield, 204 F.2d 366 (2 Cir. 1953); cert. denied 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953); Nortuna Shipping Company v. Isbrandtsen Company, 231 F.2d 528 (2 Cir. 1956), cert. denied 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956); Petition of Ropner Shipping Co., 118 F. Supp. 919 (S.D.N.Y. 1954); New York Central Railroad Co. v. Erie Railroad Co., 30 Misc.2d 362, 213 N.Y.S.2d 15 (Sup. Ct. 1961); and see S.M. Wolff Company v. Tulkoff, 9 N.Y.2d 356, 214 N.Y.S.2d 374, 174 N.E.2d 478, 480-481 (Ct. App 1961); Application of Buchanan, 9 A.D.2d 1010, 194 N.Y.S.2d 741 (App. Div. 1959).
In Mitchell v. Alfred Hofmann, Inc., 48 N.J. Super. 396, 406 (App. Div. 1958), certif. denied 26 N.J. 303 (1958), the issue was expressly left open, but the court considered and decided the merits of the laches issue against the party advancing *604 it. However, plaintiff's position is indirectly supported by McKeeby v. Arthur, 7 N.J. 174 (1951), where, without considering whether the defense of waiver was for the court or the arbitrators, the court assumed the former and ruled that the party seeking arbitration was barred for having litigated the merits of the contract dispute in court. Waiver of arbitration is universally treated as justiciable by the court. 5 Am. Jur.2d, Arbitration and Award, § 51, p. 556; Annotation, 117 A.L.R. 301 (1938); Annotation, 161 A.L.R. 1426 (1946).
No authority is cited by defendants holding the issue of laches to be for the arbitrators rather than the court. In view of the consistent trend of authority to the contrary, and not without recognition of the respectable theoretical argument by defendants that the whole controversy, inclusive of laches, should be left for the arbitration forum, we hold that the trial court properly retained jurisdiction to determine the merits of the laches question (including the interwoven aspects of estoppel and waiver).
A word, however, as to the time period and scope of the events in relation to which the issue of laches should be considered and determined. In passing upon the merits of the laches question, the majority of the court in Reconstruction Finance Corp. v. Harrison & Crosfield, supra, employed rules of burden of proof as to laches dependent upon whether the time lapse in suing for arbitration was less or greater than the analogous statute of limitations. Holding that the period of limitations in that situation did not begin to run until the making of the demand for arbitration, notwithstanding the asserted breach of contract occurred much earlier, and that the statute of limitations had not yet tolled the cause of action for arbitration, the court ruled that the burden was on the objecting party to establish extraordinary circumstances warranting invocation of laches, and that the burden had not been met. In dissenting, Judge Clark viewed the burden of proof as resting on the party there demanding arbitration on the ground that the relevant time period began with the *605 original breach of contract. He thought his result was "possibly desirable in the long run as not pressing the useful and desirable device of arbitration to unreasonable and unexpected extremes" (204 F.2d, at p. 371). We take no position with respect to the matter of statute of limitations here, it not being involved. However, although the general burden of establishing laches must here rest on plaintiff, as is ordinarily the case with affirmative defenses, John Hancock, etc., Ins. Co. v. Cronin, 139 N.J. Eq. 392, 398 (E. & A. 1947), sound application of the rationale for the defense requires appraisal of the facts as of the time of the asserted breach of contract and the conduct of the parties thereafter, rather than solely as of and after the demand for arbitration. Although it may be that, in a technical sense, the cause of action for arbitration, qua arbitration, does not arise until the demand therefor and its refusal, the equitable nature of the defense of laches realistically calls for a more encompassing inspection of the pertinent circumstances. Note the facts given consideration in Application of Buchanan and New York Central Railroad Co. v. Erie Railroad Co., both supra. And see, generally, Annotation, 37 A.L.R.2d 1125 (1954).
Defendants' brief also asserts error in the denial by the trial court of their earlier motion to dismiss for lack of jurisdiction over their persons; also as to the grant of the temporary injunction. However, the application for leave to appeal upon which this appeal is jurisdictionally based was expressly confined to the order denying defendants' motion to compel arbitration, and the order granting leave was framed in terms of the application for leave to appeal. No application for leave to appeal was ever filed in relation to the order granting the preliminary injunction or that denying the motion to dismiss for lack of jurisdiction. The added issues mentioned are thus not before us and have therefore properly not been argued or briefed by plaintiff. In the circumstances, we do not deal with them.
Affirmed and remanded for further proceedings consistent with this opinion. No costs on this appeal.