**AMERICAN HOME ASSURANCE COMPANY and the Northern Assurance Company of America, Plaintiffs-Appellees,**

v.

**AMERICAN FIDELITY AND CASUALTY COMPANY, Incorporated, Defendant-Appellant.**

No. 153, Docket 29857.

United States Court of Appeals Second Circuit.

Argued Nov. 9, 1965.

Decided Feb. 23, 1966.

Copal Mintz, New York City (Harold Davis, New York City, on the brief), for plaintiffs-appellees.

Murray Gartner, New York City (Richard H. Borow, Alan G. Fleischer, Richmond, Va., and Poletti Freidin Prashker Feldman & Gartner, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

American Fidelity and Casualty Co., Inc. appeals from an order of the United States District Court for the Southern District of New York, Richard H. Levet, Judge, granting summary judgment, directing it to proceed to arbitration and staying its action against appellees in the United States District Court for the Eastern District of Virginia. We find no error and affirm the judgment.

Appellees, American Home Assurance Company and the Northern Assurance Company of America, entered into a Treaty of reinsurance with Fidelity effective January 1, 1956. Appellees were reinsurers. Article IX of the contract provided for arbitration under the laws of New York "in the event of any dispute between the company [Fidelity] and the reinsurers in connection with this agreement." Article VI set the premium Fidelity would pay at 3½% of the total net premium which Fidelity received.

In December 1957 the parties executed Addendum No. 8, by which the rate was reduced from 3½% to 3% commencing January 1, 1958. Appellees forwarded a letter to Fidelity accompanying the Addendum as executed; the letter confirmed the execution and continued, "this reduction * * * is being made on the understanding that in the event the final loss ratio on this contract during the years 1955, 1956, and 1957 exceeds 65% of the Gross Premium, * * * there shall be an adequate amendment of the premium * * * on a basis to be mutually arranged, but such amendment shall * * * not [be] retroactive."

By letter of August 7, 1962, appellees claimed that the 65% level had been exceeded and requested an additional ½% for the years 1958 on. Fidelity did not reply, and between January and August 1963 appellees withheld $297,521.72 due from appellees under the contract, of which $287,943 appellees claimed equalled the extra premium due from it by way of the ½% premium increase. The difference, $9,578.72, was tendered Fidelity on August 6, 1963; Fidelity kept this check until April 24, 1964, when it returned the check and demanded the $287,943. Appellees demanded arbitration by letter of May 12, 1964, and Fidelity brought the Virginia action, to collect the $297,521.72.

Appellees had prepared Addendum No. 27 in September 1962 after sending the letter suggesting an extra ½%. That Addendum provided for an increase of ½% effective January 1, 1958. Appellant did not sign that Addendum.

Appellees brought these actions in the District Court for the Southern District of New York, now consolidated, seeking an injunction against the Virginia action until entry of a judgment on an award in arbitration, and requesting an order compelling arbitration.

Appellant claims that there was no agreement to arbitrate the matter of agreeing to a reinsurance rate change, that the arbitration provision applies only to the original contract and not the subsequent letter, and that any rights the reinsurers have to alter the rate arise out of the letter of December 1957, which provides for a change by agreement, not by arbitration. We do not agree. The letter was clearly intend-

ed to be read with the Addendum and hence constituted a modification of the original contract. As such, any dispute with respect to its interpretation or effect was "in connection with" the contract and within the reach of the arbitration agreement. It is not beyond possibility for the arbitrators to construe the letter as meaning that excess of losses over 65% of the gross premiums should immediately end the "reduction," unless other arrangements were made; to leave the whole matter for agreement would be a rather strange contract for businessmen to make. Also appellees assert that if Addendum No. 8 is not so interpreted, it should be rescinded for fraud or reformed to embody their interpretation. Under New York law, reformation of a contract involves a claim falling within a

provision to arbitrate disputes "arising out of" the contract, Agora Development Corp v. Low, 19 A.D.2d 126, 241 N.Y.S. 2d 126 (1st Dept. 1963); Lipman v. Haeuser Shellac Co., 289 N.Y. 76, 43 N. E.2d 817, 142 A.L.R. 1088 (1942), and should be encompassed by the broader provision to arbitrate controversies "in connection with" the agreement. See Sussleaf-Flemington, Inc. v. Bruce, 84 N.J.Super. 599, 203 A.2d 131 (App.Div. 1964).

■ It is argued that the notice of demand is insufficient. It appears, however, that the notice of demand [1] is more than a mere conclusory statement that a dispute exists. Cf. In Matter of Electronic & Missile Facilities, Inc., 20 A.D. 2d 891, 248 N.Y.S.2d 944 (1964); Uni-

[1].            [Letterhead of]
AGENCY MANAGERS LIMITED
102 Maiden Lane
New York, N. Y. 10005
Certified Mail
Return Receipt Requested
                    May 12, 1964
American Fidelity & Casualty
   Company Incorporated
c/o Stewart, Smith & Co., Inc.
116 John St.
New York, N. Y. 10038
Gentlemen:
   A dispute and controversy exist between American Fidelity & Casualty Company, Incorporated and American Home Assurance Company and Northern Assurance Company of America (formerly known as The Northern Assurance Company Limited) (here called "the Reinsurers"). The existence of such dispute is evident in the demands recently made by your attorneys, Messrs. Hirschler & Fleischer, and by other facts and circumstances which are known to you and appear in the correspondence. A dispute also arises from your failure to sign and agree to Addendum No. 27 which was to be attached to and form a part of RD 0231/177, the Treaty between you and the Reinsurers. You have failed to mutually arrange or agree with Reinsurers to the increase on an adequate basis of the premium due under the Treaty; such adjustment should be at least an increase from 3% to 3½% to apply upon the premiums declared by you under said Treaty for the period commencing January 1, 1958 until cancellation of said Treaty, July 1, 1961.

The differences of opinion and controversies between you and Reinsurers arise from said disputes. Reinsurers and we have been prevented from settling their accounts or ascertaining their liabilities, if any, also by reason of your failure and refusal to mutually arrange the adjusted premium rate as you were and are required to do.
   In behalf of the Reinsurers under Contract RD 0231/177, Article IX thereof, we hereby demand arbitration of the various disputes and controversies between you and the said Reinsurers for whom we are authorized agents for all purposes of this letter and demand.
   We name Mr. John R. Wiest of 33 Maiden Lane, New York, N. Y. 10038, as arbitrator in connection with the arbitration hereby demanded.
   We call your attention to the fact that you are bound to name an arbitrator within one month from the date hereof.
   The Reinsurers request the arbitrators to hold their arbitration in the City of New York. The holding of the arbitration in this City would be most consistent with the fact that Article IX of the Treaty states that the arbitration laws of New York State shall govern such arbitration.
   We are sending to your intermediary the extra copy of this letter to enable the said intermediary to send it to you post-haste.
                    Very truly yours,
                    R. H. Jones
                    Richard H. Jones
                         Executive Vice President
RHJ:VR

pak Aviation Corp. v. Mantell, 20 Misc.2d 1078, 196 N.Y.S.2d 126 (Sup.Ct.N.Y.Co. 1959). It sets forth among other things the failure to sign Addendum No. 27, the claimed adjustment of the premium rate, and the period for which the adjustment is claimed. This is enough.

■■ The meaning and effect of Addendum No. 8, reducing the premium payable from 3½% to 3%, and the accompanying letter providing for an adequate amendment in case of loss ratio over 65% of the gross premiums on a basis to be mutually arranged are the principal facts in dispute and under Article IX of the contract of reinsurance must be submitted to arbitration. It is precisely such questions in specialized commercial dealings of this sort that are especially adapted to resolution by commercial men as arbitrators. Having chosen in advance such a tribunal, appellant may not enlist the aid of the courts to delay or defeat its proper functioning. In the Matter of the Arbitration between Marcy Lee Manufacturing Company and Cortley Fabrics Co., Inc., 354 F.2d 42 (2 Cir. 1965), Chatham Shipping Co. v. Fertex Steamship Corp., 352 F.2d 291 (2 Cir. 1965).

The judgment is affirmed.