**AERONAVES de MEXICO, S.A.,**
**Plaintiff,**

v.

**TRIANGLE AVIATION SERVICES,**
**INC., Defendant.**

**No. 74 Civ. 2691.**

United States District Court,
S. D. New York.

Sept. 16, 1974.

Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff.

Miller & Seeger, New York City, for defendant.

## MEMORANDUM DECISION

BRIEANT, District Judge.

Plaintiff, Aeronaves de Mexico, S. A., ("Aeronaves"), has moved to stay arbitration pending the determination of this action for a declaratory judgment that the matters in controversy are not within the scope of its agreement to arbitrate. Defendant Triangle Aviation Services, Inc. ("Triangle"), opposes, and has moved for an order pursuant to Rule 12(b)(6), F.R.Civ.P., dismissing the complaint for failure to state a claim.

On November 16, 1973, Triangle and Aeronaves entered into a written agreement (the "Agreement") under which, for a period certain, Triangle was to provide ground services in New York at John F. Kennedy International Airport ("JFK") for Aeronaves' aircraft. In Article VII of the Agreement, the parties agreed that "[a]ny and all controversies in connection with and/or arising out of this Agreement or the breach thereof shall be exclusively settled by arbitration. . . . "

The Agreement provided that Aeronaves would submit to Triangle "the flight patterns and operational characteristics" of its flight schedule. [Agreement, ¶¶ 2–3 and 2–4.] At that time, Aeronaves' fleet of aircraft at Kennedy Airport included DC 8/50 and DC 8/63 series aircraft. Charges for services were predicated upon varying manpower and equipment requirements for servicing the particular models. The Agreement further provided [¶ 3–3], that if the volume of flights, aircraft types, arrival/departure times, or cargo load factors changed, Triangle would determine what, if any, additional manpower and equipment would be required and "an increase in the charges will be negotiated to the satisfaction of both parties."

Some time prior to May 2, 1974, Aeronaves notified Triangle that it intended to operate DC–10 aircraft to and from JFK, and requested that Triangle quote charges. Triangle submitted a price quotation on May 2, 1974. This quotation was rejected by Aeronaves, and thereafter, no agreement was reached with respect to increased charges as a result of Aeronaves' shift to DC–10 aircraft. Aeronaves hired others to service these flights.

On June 5, 1974, Aeronaves was served with a demand for arbitration. Triangle is seeking an award from the arbitrator holding that (Exhibit F, Affidavit of Mr. Constantino Trejo, sworn to June 20, 1974):

1. The Agreement binds the parties until December 31, 1975, regardless of the aircraft type which Aeronaves elects to use.

2. All changes in price authorized by the contract, if not agreed to, must be arbitrated in accordance with the terms thereof, inclusive of price changes occasioned by changes in aircraft types.

3. Triangle's price quotations for the servicing of Aeronaves' DC–10 flights are fair and justified.

4. Triangle is entitled to recover all damages suffered by Aeronaves' breach of the Agreement, including lost fees, costs and disbursements, administrative fees, and legal fees, together with interest.

On June 24, 1974, Aeronaves commenced this action. Plaintiff's mo-

tion for a stay invokes the equity powers of the Court rather than a specific remedy under the Federal Arbitration Act. In determining whether an issue is arbitrable, the "court's function . . . is limited to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract [to arbitrate]." Hamilton Life Insurance Company of New York v. Republic National Life Insurance Company, 408 F.2d 606, 609 (2d Cir. 1969). The instant Agreement contemplated the possibility of a change in aircraft types and provided for the negotiation of new charges. Its arbitration clause, previously quoted, is about as broad in scope as our language permits.

Aeronaves contends that the issues in controversy are beyond the scope of the arbitration clause. The case of Necchi S.p.A. v. Necchi Sewing Machine Sales Corp., 348 F.2d 693 (2d Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L. Ed.2d 664 (1966), holds that the failure to negotiate an extension of an exclusive dealership agreement did not create an arbitrable issue, since an arbitrator could not be expected to write a renewal contract for the parties. The Agreement in this case does not call for such an undertaking by the arbitrator. In American Home Assurance Company v. American Fidelity and Casualty Company, 356 F.2d 690 (2d Cir. 1966), an arbitrable issue was found where the addendum to a reinsurance contract reduced the rate of premium and an accompanying letter provided that in the event that the final loss ratio during the stated years exceeded 65% of the gross premium "there shall be an adequate amendment of the premium . . . on a basis to be mutually arranged." *Id.* at 691.

What is at issue here is the renegotiation of a price for future services upon the happening of a commercial contingency previously contemplated. In *American Home Assurance, supra,* the Court recognized that (p. 393 of 356 F. 2d),

"[i]t is precisely such questions in specialized commercial dealings of this sort that are especially adapted to resolution by commercial men as arbitrators. Having chosen in advance such a tribunal, appellant may not enlist the aid of the courts to delay or defeat its proper functioning."

Although paragraph 3–3 of the Agreement does not indicate specifically the procedure to be followed if an increase in charges cannot be negotiated to the satisfaction of both parties, I find such failure to agree would give rise to an arbitrable controversy under the instant arbitration clause. At least, the arbitrators could so conclude. When the contract was made, it was also within the contemplation of the parties that a controversy might arise concerning increased charges due to changes in flight schedules or load factors on DC–8 aircraft, matters similarly covered by paragraph 3–3, and under the peculiar commercial situation in which the parties found themselves, entirely susceptible to resolution by arbitration. There appears to be no basis for a different conclusion as to a controversy over fees and charges emerging from a change in aircraft type.

"In deciding the question of arbitrability, the federal policy [is] to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration . . . ." Coenen v. R. W. Pressprich & Co., 453 F.2d 1209, 1212, (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972).

Here, arbitration was a reasonable means for the parties to use to fix the charges or fees upon failure to agree. Without such provision, where, as here, the change in aircraft type was foreseeable, and the reasonable charges to be made in the event of such change could not be set in advance, the parties without arbitration would have no more than *nudum pactum,* or an agreement to agree. We will not infer that either

party had any such intent, that is, to grant to the other unilateral power to abrogate or terminate this contract for a fixed term simply by refusing or failing to agree. Rather, using language apt for a perceived need, they granted the arbitrator power sufficiently broad to fix such prices.

■ Since I find that the instant controversy was encompassed by the parties' broad agreement to arbitrate, the remaining issues involve the construction and interpretation of the Agreement. Although the interpretation of the Agreement may raise issues of law, such issues may properly be entrusted to the arbitrator for decision. Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L.Ed.2d 1270 (1967); Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

Assuming, without deciding, that the Agreement is not considered a "maritime transaction or contract . . . involving commerce" and therefore not governed by federal law, this Court sitting with diversity jurisdiction would be directed to a similar result under New York law. "A broad arbitration clause should be given the full effect of its wording in order to implement the intention of the parties." Weinrott v. Carp, 32 N.Y.2d 190, 199, 344 N.Y.S.2d 848, 856, 298 N.E.2d 42, 47 (1973). "Once it be ascertained that the parties broadly agreed to arbitrate a dispute 'arising out of or in connection with' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances." Matter of Exercycle Corp., 9 N.Y.2d 329, 334, 214 N.Y.S.2d 353, 355, 174 N.E.2d 463, 464 (1961); Weinrott v. Carp, 32 N.Y.2d 190, 195–96, 344 N.Y.S.2d 848, 853, 298 N.E.2d 42 (1973).

■■ Where the issues in an action for a declaratory judgment parallel and duplicate the issues appropriately before the arbitrators, the Court may dismiss the action or deny all relief, or declare and enforce defendant's rights to arbitrate. Necchi S.p.A. v. Necchi Sewing Machine Sales Corp., *supra*, 348 F.2d at p. 696. An order compelling arbitration under § 4 of the Federal Arbitration Act is appropriate here.

Plaintiff's motion for a stay of arbitration is denied. Defendant's motion is granted to the extent of directing entry of a final judgment which will declare the right of the defendant to compel and direct arbitration of the entire controversy, and deny any relief to plaintiff. Nothing herein contained shall be deemed to adjudicate any aspect of the merits of the underlying controversy. The arbitrators shall enjoy the same plenary jurisdiction to decide all of the issues of fact and law, including the interpretation of the contract, which has been entrusted to them by the arbitration clause previously quoted, to settle "[a]ny and all controversies arising out of this Agreement or the breach thereof. . . . ." See *Robert Lawrence Co., supra*, 412.

The proceedings before the arbitrators are stayed pending expiration of the time within which an appeal may be taken, and if taken, pending the decision thereon. No bond is necessary.

Settle a final judgment on five (5) days notice.