In re the **POINT WYLIE COMPANY** **(Formerly Tega Cay Associates), a Limited Partnership and Tega Cay Utilities, Inc., Debtors.**

**F. William HARGROVE, as Trustee for Unsecured Creditors, Plaintiff.**

v.

**TEGA CAY DEVELOPMENT COMPANY, INC., Crescent Land & Timber, Pritchard Paint & Glass, Research Development Ind., Seven Up Rock Hill Bottling, Spencer & Spencer, Tega Cay Property Owners Assoc., Spratt, McKeown & Spratt, Price Waterhouse & Co., Realty Capital Inc., a Alan Wallwork, Watson Advertising, Evening Herald, Federal Express, Guerard & Applegate, P.A., Hach Chemical Co., Hale & Dorr, Kelly Equipment Co., Mack, Mack & Freeman, Moore Electric Supply, Inc., Pound & Moore, Rock Hill Concrete Co., Jim Wilson, Bi-San-Co, Inc., Callahan Landscaping, Cannon, Kline & Blair, P.A., Carolina Time Equipment, Charlotte Chair & Equipment Rentals, Inc., Culp Brothers, Inc., Custom Trophies, Inc., Daytimers, George R. Knight, Lucas Concrete Products, Marbleland of Locust, McFarland Builders, McNeill's Heating & Air Cond., Mecklenburg Drywall Co., Bob Noon, Professional Planning Assoc., Quality Systems, Inc., Rea Brothers, a Applied Insulation, Austin Insulating Co., W.R. Burke, Carolina Glazing Co., Cheek Insulation, Components, Inc., Daughtry Sheet Metal Co., Duron Paints Company, Effective Environment, Inc., Fort Mill Telephone Co., H & S Lumber Co., Catawba Laboratories, Duke Power Co., Faulkner Well Company, Jones Chemicals, Arrow International, Xerox Corp., Allied Security Forces, Chase Manhattan Mortgage, Bowman Dist., Blake Brothers Texaco, Club Car, Inc., Goltra, Inc., Hearn Leasing Co., Jones Chemical Co., Oxford Chemicals, Defendants.**

**Bankruptcy Nos. 81–00118, 81–00119.**

**Complaint No. 86–0309.**

United States Bankruptcy Court,
D. South Carolina.

Sept. 1, 1987.

**454**

Terry Laws, Nelson, Mullins, Riley & Scarborough, Greenville, S.C., for plaintiff.

Matthew J. Siembieda, Blank, Rome, Comita & McCauley, Philadelphia, Pa., for defendant Tega Cay Development Co.

Vickie R. Steele, Finkel, Georgaklis, Goldberg, Sheftman & Korn, P.A., Columbia, S.C., for defendant Crescent Land & Timber.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Bankruptcy Judge.

■ This adversary proceeding came before the court on a petition for interpleader filed by "F. William Hargrove, as Trustee for Unsecured Creditors" [1], after a dispute arose regarding his proposed distribution of monies pursuant to a confirmed chapter 11 plan of reorganization.

In resolving the petition, the court must decide whether Tega Cay Development Company is entitled to any of the proceeds to be distributed to the unsecured creditors.

### I

### PROCEDURAL HISTORY

Pursuant to a chapter 11 plan of reorganization, confirmed by this court on May 24, 1983 and filed by the clerk of court on May 31, 1983, the plaintiff, F. William Hargrove, was named disbursing agent for the class of unsecured creditors of the debtors (the Point Wylie Company, (formerly Tega Cay Associates) a Limited Partnership, and Tega Cay Utilities, Inc.).

In accordance with the terms of the plan, Mr. Hargrove was given a promissory note (and the mortgage which secured it) for the payment of monies to the class of unsecured creditors of the debtors. (*see*, pp. 455–456, *infra*).

Having collected the proceeds of the note, Mr. Hargrove, as disbursing agent, proposed a distribution of the proceeds. Crescent Land and Timber Company (Crescent) objects to the proposed distribution.

While Tega Cay Development Company (Tega Cay) asserts a $5,000,000. unsecured claim against the debtor estate, Crescent objects to the allowance of the unsecured claim in any amount.

Even if the $5,000,000. claim, which is easily the largest unsecured claim, were

allowed, there are only $62,900. available out of which Mr. Hargrove is directed to distribute *pro rata* in satisfaction of the allowed claims of the class of unsecured creditors.

Mr. Hargrove, as disbursing agent for the unsecured creditors, has interpleaded the proceeds available for distribution into this court and seeks a determination as to the parties entitled to participate in a distribution of the proceeds to the unsecured creditors.

### II

### FACTS

### A

### *Filing of Petition*

1. Each debtor has filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 30, 1981. By order filed with the clerk of court on February 3, 1981, the court ordered the joint administration of the two bankruptcy cases of the debtors (Case Nos. 81–00118 and 81–00119).

2. On Schedule A–2 of the petition for relief, the Point Wylie Company listed the Twenty-Seven Trust as a secured creditor having a $13,058,818. secured claim. Tega Cay is the assignee of all of the rights of the Twenty-Seven Trust. The total of the secured claims listed on Schedule A–2 is $13,177,343.17. While Tega Cay is the assignee of all of the rights of the Twenty-Seven Trust, the unsecured claim of the Twenty-Seven Trust and the unsecured claim of Tega Cay constitute the same claim. Herein, this claim will be referred to as the unsecured claim of Twenty-Seven Trust.

3. Neither of the debtors has listed the Twenty-Seven Trust on its Schedule A–3, the list of unsecured creditors. The Point Wylie Company listed Crescent on its Schedule A–3 as an unsecured creditor with

---

1. Article I of the plan confirmed on May 24, 1983 names Mr. F. William Hargrove as the disbursing agent. The plan does not name Mr. Hargrove as the trustee for the unsecured creditors. This court has never appointed Mr. Hargrove as the trustee for the unsecured creditors. Therefore, the caption to this complaint improperly refers to Mr. Hargrove as the trustee for the unsecured creditors.

a claim in the amount of $1,155,700. Neither the Twenty-Seven Trust nor Tega Cay has filed a proof of claim. Nor has the Twenty-Seven Trust or Tega Cay moved, under 11 U.S.C. § 506[2] and Bankruptcy Rule 3012, for a determination of the secured status of the Twenty-Seven Trust.

## B

### Disclosure Statement

4. The Twenty-Seven Trust, the debtors' largest secured creditor, filed a disclosure statement and a chapter 11 plan of reorganization with the clerk of court on September 16, 1982.

Approved by this court on December 22, 1982, the disclosure statement states:

(a) that "as of the petition date, there was owed to various unsecured creditors the amount of $1,680,510.70." (Disclosure statement for the chapter 11 plan filed by the Twenty-Seven Trust, p. 12).

(b) that "the claimants of this class [class 4] consist of suppliers, advertisers, consultants, professionals and others." (Disclosure statement, p. 12–13).

(c) that the unsecured creditors will receive a $50,000. note, secured by a mortgage on a portion of the debtors' real property, to be used for the benefit of the unsecured creditors with the proceeds thereof distributed *pro rata* to the unsecured creditors. (Disclosure statement, p. 13).

(d) that the unsecured creditors may receive $.03 on each dollar owed as a result of the proposed plan, and that such a proposed payment would exceed any recovery unsecured creditors would receive if the debtors were to undergo a chapter 7 liquidation. (Disclosure statement, p. 13).

5. An amended disclosure statement entitled "Disclosure Statement for First Amendment to Chapter 11 Plan Filed by the Twenty-Seven Trust" was filed with the clerk of court on February 23, 1983. Neither this amended disclosure statement nor the amended plan filed therewith altered the treatment of Class 4 creditors described above. The "Disclosure Statement for First Amendment to Chapter 11 Plan Filed by the Twenty-Seven Trust" was approved by court order dated February 23, 1983.

6. On April 18, 1983, the Twenty-Seven Trust filed with the clerk of court a second amended disclosure statement entitled "Supplemental Disclosure Statement for New Chapter 11 Plan"; this new disclosure statement was filed with a document entitled "New Chapter 11 Plan". Neither this disclosure statement nor this plan changed the treatment afforded Class 4 creditors from that previously described. By order dated May 2, 1983, the court approved the "Supplemental Disclosure Statement for New Chapter 11 Plan".

## C

### Balloting

7. In connection with the confirmation hearing on the Twenty-Seven Trust's chapter 11 plan of reorganization, the Twenty-Seven Trust filed, in favor of the plan, a ballot which indicated that the Twenty-Seven Trust was both a Class 1 creditor (a class consisting only of the Twenty-Seven Trust) and a Class 4 creditor (a class comprising all unsecured creditors other than real property owners). While indicating a Twenty-Seven Trust vote in two classes, the ballot listed a single amount—$14,546.473.68. The failure of the Twenty-Seven Trust to break down the amount of its claim by class rendered difficult the tabulation of the vote for the purposes of determining the "two-thirds in amount" requirement for acceptance by a class as set forth in § 1126(c).

8. On May 9, 1983, the Twenty-Seven Trust filed with the clerk of court a second amended disclosure statement entitled "Supplemental Disclosure Statement for New Chapter 11 Plan" and the "New Chapter 11 Plan" (*see* Fact 6). The court held a hearing on the confirmation of the "New Chapter 11 Plan" on May 24, 1983.

**2.** Further references to the Bankruptcy Code are by section numbers only.

9. Crescent voted against the confirmation of the plan.

10. On May 24, 1983, Crescent filed a written objection to the Twenty-Seven Trust's being allowed to vote as a Class 4 creditor.

### D

### *Confirmation of the Plan*

11. At the May 24, 1983 confirmation hearing, Crescent orally objected to the Twenty-Seven Trust's voting as a Class 4 unsecured creditor.

12. Pointing out that the Twenty-Seven Trust had not filed a proof of claim as an unsecured creditor, Crescent argued that the Twenty-Seven Trust holds only a Class 1 secured claim by virtue of the Point Wylie Company's listing the Twenty-Seven Trust as a secured creditor on its schedules. (Transcript of May 24, 1983 confirmation hearing (Transcript) at 10–11).

13. Crescent further argued that because the extent of the Twenty-Seven Trust's secured status had never been determined pursuant to a § 506(a) valuation hearing, the Twenty-Seven Trust is not an unsecured creditor for purposes of distribution. (Transcript at 21).

14. At the confirmation hearing and in its written objection, Crescent asserts that it had no notice, until the Twenty-Seven Trust filed its ballot, that the Twenty-Seven Trust intended to vote as an unsecured creditor and to share in the distribution of the proceeds of the note as provided by the plan. In support of this contention, Crescent points out that the Twenty-Seven Trust (a) did not appear on the debtors' schedules of unsecured creditors, (b) failed to file a proof of claim as an unsecured creditor and (c) never determined its secured status pursuant to a § 506(a) valuation hearing.

15. At the confirmation hearing, this court declined to reach the following issues surrounding the question of whether the Twenty-Seven Trust had an allowed unsecured claim: whether the Twenty-Seven Trust should be allowed to vote as a Class 4 unsecured creditor, and whether the Twenty-Seven Trust should be allowed to participate in any distribution to unsecured creditors. Not having been raised by motion, these issues were not properly before the court. The issue properly before the court was whether the plan should be confirmed. (Transcript at 22).

16. Finding that—according to the plan—the holders of claims or interests junior to Class 4 would neither receive nor retain property under the plan, this court concluded, pursuant to § 1129(b)(2)(B), that the plan could be confirmed even if Class 4 voted to reject the plan. (Transcript at 23).

17. Having so found, this court, in order to confirm the plan, did not need to reach the issue of whether the Twenty-Seven Trust could vote in Class 4.

18. In summary, this court, during the May 24, 1986 confirmation hearing, declined to reach the issues related to the question of whether the Twenty-Seven Trust had an allowed unsecured claim because those issues were not properly before the court by motion, and a determination of those issues was not necessary in order for the plan to be confirmed.

19. Accordingly, the court, by order dated May 24, 1983, confirmed the "New Chapter 11 Plan" filed by the Twenty-Seven Trust.

20. The confirmed plan defines "allowed claim" as "any claim filed by or on behalf of any creditor which is allowed pursuant to section 502 of the Code by an order or judgment of the Bankruptcy Court which is Final." (New Chapter 11 Plan, p. 12).

21. Class 1 of the confirmed plan proposed by the Twenty-Seven Trust is comprised solely of the allowed secured claim of the Twenty-Seven Trust. (New Chapter 11 Plan, p. 11).

22. Article IV, section 4.03 of the confirmed plan, which describes the treatment of the allowed secured claim of the Twenty-Seven Trust, makes no mention that any deficiency in recovery of the Class 1 secured claim of the Twenty-Seven Trust will be treated as an allowed unsecured claim.

23. Article IV, section 4.06 of the confirmed plan describes the plan's treatment of Class 4, which is comprised of the claims of unsecured creditors. Section 4.06, in its entirety, follows:

### 4.06 THE CLAIMS OF ALL REMAINING UNSECURED CREDITORS

At the Distribution Date, the holders of Class 4 Claims shall receive in the aggregate the lesser of (i) the aggregate of the amounts of their Allowed Claims or (ii) Fifty Thousand Dollars ($50,000.), to be paid by credit for the execution by Debtors of the Unsecured Creditors Note and Unsecured Creditors Mortgage in such amount, which Unsecured Creditors Mortgage shall be recorded as a first lien on a portion of Section 22 containing approximately 32.169 acres. The Twenty Seven Trust shall subordinate the lien of the Residual TST Mortgage to the lien and operation of the Unsecured Creditors Mortgage. The Unsecured Creditors Note and Unsecured Creditors Mortgage shall be held by the Disbursing Agent for the benefit of all Unsecured Creditors. Payments received under the Unsecured Creditors Note shall be distributed to each holder of a Class 4 Claim in the same ratio that the amount of the Allowed Claims of such holder bears to the aggregate amount of all Allowed Claims of each holder.

24. After confirmation of the plan, the Twenty-Seven Trust sold its interest to Stanwick Holdings, Inc. Stanwick Holdings, Inc. then sold its interest to Tega Cay.

25. There are now $62,900. on deposit with the clerk of court to be distributed to the unsecured creditors pursuant to the confirmed plan.

26. All parties which might participate in the distribution of proceeds to unsecured creditors under the confirmed plan have been named as defendants in this petition for interpleader.

### III

### ISSUE

In resolving the petition for interpleader, the issue to be determined is whether Tega Cay is entitled to participate in the distribution of proceeds of the note held for the debtors' unsecured creditors [class 4] pursuant to the confirmed plan of reorganization.

### IV

### DISCUSSION

### A

### *Crescent's Arguments*

1. In objecting to the proposed distribution to Tega Cay, Crescent offers two arguments: (1) Tega Cay does not have an allowed unsecured claim and, as a result, cannot participate in any distribution to unsecured creditors; and (2) even if Tega Cay does have an allowed unsecured claim, Tega Cay is estopped from participating in the proposed distribution because of representations made on the disclosure statement approved by this court on December 20, 1982. Crescent points out that the disclosure statement approved on December 20, 1982 states, on page 12, that "as of the petition date, there was owed to various unsecured creditors the amount of $1,680,510.70," and indicates, on page 13, that unsecured creditors may receive $.03 on each dollar owed as a result of the proposed plan, and that such a recovery would exceed any recovery unsecured creditors would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

### B

### *Tega Cay's Arguments*

In response to Crescent's arguments, Tega Cay asserts that, having a $5,000,000. unsecured claim, it should be allowed to participate in the distribution to unsecured creditors. Tega Cay, contending that Crescent is time-barred from objecting to the unsecured claim of the Twenty-Seven Trust, argues that Crescent cannot now object to the unsecured claim of the Twenty-Seven Trust for the following reasons: (1) Crescent's failure to object to the se-

cured claim of the Twenty-Seven Trust, (2) Crescent's failure to move, pursuant to § 506(a), for a determination of the secured status of the Twenty-Seven Trust, (3) the limitations period on objecting to claims has now passed, (4) the failure of Crescent to object to Tega Cay's voting as an unsecured creditor at an earlier confirmation hearing, and (5) the confirmation of the plan on May 24, 1983, and the passing of the time period within which to appeal the order confirming the plan, preclude, as *res judicata,* a denial of a distribution to Tega Cay.

## V

## CONCLUSIONS OF LAW

### A

### *Judicial Estoppel*

■ Before reaching the question of whether the Twenty-Seven Trust holds an allowed, unsecured, $5,000,000. claim, the court will examine Crescent's argument that Tega Cay is estopped from participating in the proposed distribution to unsecured creditors because the three disclosure statements—each proposed by the Twenty-Seven Trust and approved by this court—represented that the Twenty-Seven Trust had no unsecured claim for the purpose of voting, confirmation and distribution.[3]

"Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position." *Galeries Des Monnaies of Geneva, Ltd. v. Deutsche Bank* (hereinafter *In re Galerie Des Monnaies of Geneva, Ltd.*), 13 C.B.C.2d 1176, 1182, 55 B.R. 253 (Bankr.S.D.N.Y.1985), citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555 (1895); *Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1166–67 (4th Cir.1982); *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510, 513 (3rd Cir.1953); *Texas Co. v. Gulf Refining Co.,* 26 F.2d 394, 397 (5th Cir.), *cert. denied,* 278 U.S. 625, 49 S.Ct. 27, 73 L.Ed. 545 (1928); *The Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177–78 (D.S.C.1974); *American Homes Assurance Co. v. American Fidelity & Casualty Co.,* 261 F.Supp. 734, 735 (S.D.N.Y.), *aff'd* 356 F.2d 690 (2nd Cir.1966).

Tega Cay, in asserting an unsecured claim, takes a position inconsistent with that taken in each disclosure statement approved by this court. The disclosure statement approved on December 20, 1982 states, on page 12, that "as of the petition date, there was owed to various unsecured creditors the amount of $1,680,510.70," and indicates on page 13, that unsecured creditors may receive $.03 on each dollar owed as a result of the proposed plan, and that such a recovery would exceed any recovery unsecured creditors would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code. While the original chapter 11 plan of reorganization and disclosure statement were amended on two occasions, the amendments did not alter the treatment of class 4 unsecured creditors; in other words, despite the amendments, the statements regarding the treatment of unsecured creditors as described in the disclosure statement approved on December 20, 1982 remain valid.

Neither the confirmed plan of reorganization nor any of the disclosure statements—all proposed by the Twenty-Seven Trust and approved by the court—stated that any deficiency in recovery of the allowed secured claim of the Twenty-Seven Trust would be treated as a class 4 unsecured claim for the purposes of voting and distribution.[4] The confirmed plan provided that $50,000. would be available for distribution to all class 4 creditors. The allowance of the additional $5,000,000. unsecured claim in the proposed distribution would reduce the recovery to unsecured creditors from $.03 to $.007 on each dollar.

---

**3.** *See,* Facts 455–58. While Tega Cay is the assignee of all of the rights of the Twenty–Seven Trust, we note again that the unsecured claim of the Twenty–Seven Trust and the unsecured claim of Tega Cay constitute the same claim. This claim is referred to as the unsecured claim of the Twenty–Seven Trust.

**4.** *See,* "Disclosure Statement for Chapter 11 Plan Filed by the Twenty–Seven Trust", filed by the clerk of court on September 16, 1982, p. 9–10; and the "New Chapter 11 Plan", which was filed on May 9, 1983, at p. 12–17.

The inference is inescapable that the Twenty–Seven Trust implied in the three disclosure statements—proposed by it and approved by the court—that it was not asserting an unsecured claim for the purposes of voting and distribution. If the Twenty–Seven Trust determined that it would assert a $5,000,000. unsecured claim *after* the filing of its disclosure statement, that disclosure statement should have been amended to inform creditors of the claim and to provide them with the "adequate information" required by § 1125. *In re Galerie Des Monnaies of Geneva, Ltd.*, 13 C.B.C.2d 1176, 1183, 55 B.R. 253 (Bankr.S. D.N.Y.1985). Neither the first nor the second amended disclosure statement approved by the court contained any new information which indicated that the Twenty–Seven Trust would assert a $5,000,000. unsecured claim.

■ This court confirmed the chapter 11 plan which was proposed by the Twenty–Seven Trust on May 24, 1983. After confirmation of the plan, the Twenty–Seven Trust sold its interest to Stanwick Holdings, Inc. Stanwick Holdings, Inc., in turn, sold its interest to Tega Cay. The post-confirmation transfers do not prevent the application of judicial estoppel to Tega Cay. If the court were to find otherwise, the disclosure requirements of § 1125 could be easily circumvented. The interest which Tega Cay purchased from Stanwick Holdings, Inc., is the interest which Stanwick Holdings, Inc. purchased from the Twenty–Seven Trust. Tega Cay's argument is not convincing as to lack of notice as to the representations made by the Twenty–Seven Trust in the disclosure statement and the confirmed plan—those very documents delineate the interest purchased by Tega Cay. Furthermore, Tega Cay offers no explana-

tion for the change of position from that represented in the disclosure statements and in the confirmed plan. Neither Tega Cay nor the Twenty–Seven Trust ever sought to amend the disclosure statement in order to disclose a $5,000,000. unsecured claim.[5]

■ At the confirmation hearing, this court found that the chapter 11 plan could be confirmed even if the class of unsecured creditors rejected the plan since the debtors neither received nor retained property under the plan. Section 1129(b)(2)(B)(ii). It is without merit for Tega Cay to suggest that the unsecured creditors would not be prejudiced by the late inclusion of the $5,000,-000. unsecured claim because the plan would have been confirmed regardless of acceptance or rejection by the unsecured class. A finding of prejudice is not required here. It is the doctrine of equitable estoppel which protects any adversary who may be prejudiced by an attempted change of position; judicial estoppel is designed to protect the integrity of the courts. *The Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1177–78 (D.S.C.1974). As the object of judicial estoppel is to preserve the integrity of judicial proceedings, the doctrine does not require a finding of prejudice to the party invoking it. *In re Galerie Des Monnaies of Geneva, Ltd.*, 13 C.B.C.2d 1176, 1183, 55 B.R. 253 (Bankr.S. D.N.Y.1985).

Accordingly, in order to maintain the integrity of the judicial proceedings in this case, this court holds that Tega Cay is judicially estopped from participating in the proposed distribution to unsecured creditors.[6]

**B**

Because the court holds that Tega Cay is judicially estopped from participating in the

---

**5.** *See, In re Galerie Des Monnaies of Geneva, Ltd.*, 13 C.B.C.2d 1176, 1183, 55 B.R. 253 (Bankr. S.D.N.Y.1985).

**6.** As stated by the court in *In re Galeries Des Monnaies of Geneva, Ltd.*, 13 C.B.C.2d 1176, 1183, 55 B.R. 253 (Bankr.S.D.N.Y.1985): "The preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor. 5 *Collier on Bankruptcy*, ¶ 1125.01 (15th ed. 1985). It is relied on by both the creditors of the debtor before they vote on

the plan of reorganization, and by the bankruptcy court before approving it. Given this reliance, it is crucial that a debtor be absolutely truthful so that the disclosure statement meets the Code standard in § 1125 of enabling '... a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ...' 11 U.S.C. § 1125(a)(1). The legislative history of § 1125 states that what constitutes "adequate information" will be determined by the facts

proposed distribution to unsecured creditors, it is not necessary for the court to decide whether Tega Cay has an allowed unsecured claim; or whether Crescent is, for the reasons previously outlined on page 11, barred from objecting to the unsecured claim of the Twenty–Seven Trust.

## ORDER

IT IS ORDERED, ADJUDGED AND DECREED that the petition for interpleader is granted and that F. William Hargrove, in accordance with the confirmed chapter 11 plan of reorganization, is authorized to disburse the $62,900. to all of the defendants in this adversary proceeding other than Tega Cay Development Company, Inc.

and circumstances of each case in the discretion of the bankruptcy court. H.R.REP. No. 95–595, 95th Cong., 1st Sess. 408 (1977); S.REP. No. 95–989, 95th Cong., 2d Sess. 120 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5906, 6364. It is clear, however, that in all cases, facts which inform claimants about the financial results of acceptance or rejection of a plan, must be included. *In re Stanley Hotel,* 13 B.R. 926, 929, 8 B.C.D. 35, 5 C.B.C.2d 64 (Bankr.D.Colo.1981);

*cf. In re J.E. Jennings, Inc.,* 46 B.R. 167, 170, 12 B.C.D. 905, B.L.D. ¶ 70262 (Bankr.E.D.Pa.1985) (no financial harm to creditors where preference action not stated in Disclosure Statement, since the court had retained jurisdiction, and any recovery of additional funds would go to creditors). The necessary implication of this is that a debtor amend its disclosure statement, when necessary to be fully accurate."