## In re GALERIE DES MONNAIES OF GENEVA, LTD., Debtor.

## GALERIE DES MONNAIES OF GENEVA, LTD., Plaintiff,

### v.

## DEUTSCHE BANK, A.G., NEW YORK BRANCH, Defendant.

**Bankruptcy Nos. 82 B 11088, 85–5745A.**

United States Bankruptcy Court, S.D. New York.

Nov. 22, 1985.

---

Zalkin, Rodin & Goodman, New York City, by Andrew D. Gottfried, of counsel, for Deutsche Bank A.G., New York Branch.

Gantz, Hollinger & Towe, New York City by David L. Gantz, of counsel, for Galerie Des Monnaies of Geneva, Ltd.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Galerie Des Monnaies of Geneva, Ltd. (the "Debtor") commenced this suit against Deutsche Bank, A.G., New York Branch (the "Bank") to recover under § 547 of the Bankruptcy Code, 11 U.S.C. § 547 (1984) (the "Code"), a series of allegedly preferential transfers in the amount of $105,-635.26. The Bank moved to dismiss the complaint, to which the Debtor responded with a motion for summary judgment.

### I

From the papers before us, it appears that the Bank made a loan to the Debtor on May 8, 1981 in the amount of $1,500,000.00, payment of which was collateralized by security agreements dated November 28, 1979 and May 27, 1981 creating a lien on all of Debtor's inventory and accounts receiva-ble, and was perfected by the filing of a UCC–1 financing statement.

An involuntary petition under Chapter 7 of the Code was filed against the Debtor on June 10, 1982 (the "filing date"). The Debtor converted the case to one under Chapter 11 of the Code on or about July 10, 1982 and an order for relief was entered. The Debtor continued in operation of its business and in possession of its property as a debtor-in-possession.

On the filing date, the Bank had in its possession approximately $500,000.00 in coins constituting inventory of the Debtor, which had previously been turned over to the Bank after the Debtor had defaulted on the loan. In addition, the Bank had in its possession cash collateral in the amount of $1,496.00 representing the proceeds of ac-counts receivable of the Debtor paid to the Bank by account debtors of the Debtor.

On July 26, 1982, the Bank sold and assigned to Cosmonor S.A. ("Cosmonor") its loan to the Debtor, and the related security documents and interest in the col-lateral. Because of the automatic stay in effect since the filing date pursuant to § 362 of the Code, the Bank did not turn over to Cosmonor the collateral of the Debtor that it was holding but agreed to do so upon order of this Court.

On November 5, 1982, Cosmonor, as as-signee of the Bank, began an adversary proceeding (the "Cosmonor adversary pro-ceeding") against the Debtor, the Bank, and the Committee of Unsecured Creditors of the Debtor ("Creditors Committee"), seeking an order modifying the automatic stay by permitting the Bank to turn over to Cosmonor the collateral it held and for relief from the automatic stay against en-forcement of the lien against the collateral. Cosmonor alleged that it had not been paid any of the loan amount, that its secured claim was not adequately protected, and that the Debtor had no equity in the collat-eral held by the Bank. It further alleged that, since the Debtor had ceased business operations, it had no need for the collateral either to continue business or for a success-ful reorganization.

The Bank answered by interposing an interpleader, alleging that it was in possession of Debtor's collateral as bailee for Cosmonor and that it had received conflicting demands with respect to the disposition of such collateral.

The answer of the Creditors' Committee contained cross-claims which alleged that the Bank had received voidable preferences.

On September 27, 1983, this Court entered an order, on consent of Cosmonor, directing the Bank to turn over to the Debtor the inventory and collateral in its possession to sell, and hold the proceeds in escrow pending this Court's determination as to the proper party entitled to them. The Bank did so.

A plan of reorganization (the "Plan") was subsequently filed by the Debtor and its Disclosure Statement was approved by this Court on December 13, 1984 as containing adequate information pursuant to § 1125(b) of the Code. The Disclosure Statement indicated that the Debtor's management did not believe that preferences or fraudulent transfers had occurred, a position taken after discussions with its counsel and accountants. It also provided that when the order confirming the Plan became a final order, the adversary proceeding of Cosmonor against the Debtor, the Bank, and the Creditors' Committee would be "... discontinued by [Cosmonor] with prejudice and all counterclaims and cross-claims contained therein and asserted by the Official Creditors Committee ... discontinued with prejudice but without costs for or against either party."

The Plan was confirmed by this Court on April 25, 1985. On that same date, the Debtor initiated this adversary proceeding against the Bank, seeking recovery of allegedly voidable preferences, in the approximate amount of $22,500.00 made in April or May of 1982.[1]

The Bank promptly filed a motion to dismiss the complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P."), for failure to state a claim upon which relief can be granted on the ground of res judicata or, in the alternative, on grounds of laches and inequitable conduct on the Debtor's part, and judicial estoppel.

In addition to responding with a motion pursuant to Rule 56 of the F.R.C.P. for summary judgment, the Debtor amended its complaint to include additional sums, for a total of $105,635.26, allegedly transferred to the Bank in a manner constituting a preference. The parties agree that the motion is deemed to have been made as to the amended complaint.

## II

### RES JUDICATA

Under res judicata, or "claim preclusion", a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. *Kremer v. Chemical Contr. Corp.*, 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1890, 72 L.Ed.2d 262 (1982); *see generally* 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* §§ 4401–4405 (1981). It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." Under the rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties and those in privity with them, whether or not raised at trial. *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985); *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535–36 (5th Cir.1978). The policy behind res judicata is to relieve parties of the cost and vexation of multiple law-

---

1. The Debtor's papers are contradictory as to the amount and date of the initial allegedly preferential transfer resulting from the Bank's debiting for "interest payments". The complaint alleges $22,752.24 transferred in April 26, 1982; the Debtor's memo states $22,752.24 on May 13, 1982, and the Ahlstroem Affidavit, supported by a bank document, shows $22,604.27 on May 13, 1982.

suits, conserve judicial resources and, by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

■ The doctrine of res judicata applies with respect to all matters embraced by a plan of reorganization confirmed by final order of the bankruptcy court. *Stoll v. Gottlieb*, 305 U.S. 165, 170, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Such an order was entered by this Court on April 25, 1985. It is therefore necessary to determine whether the claim alleged in the Debtor's complaint is the same as the cross-claim of the Creditor's Committee in the Cosmonor adversary proceeding which was "discontinued" pursuant to the Debtor's Plan.

■ For res judicata to apply, there must be both an identity of parties or those in privity with them and an identity of issues between the prior and subsequent suits. *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Whether such identity of parties is present is a factual determination of substance, not mere form. *Ibid.* It is clear that both the Debtor and the Bank were involved in the Cosmonor adversary proceeding and are the parties in this present adversary proceeding, so their due process rights of notice and an opportunity to be heard, were guaranteed. The cross-claims by the Creditors' Committee was brought on behalf of the Debtor. *See In re Toledo Equipment Co., Inc.*, 35 B.R. 315, 318–19, 11 B.C.D. 832 (Bankr.N.D.Ohio 1983); *Matter of Joyanna Holitogs, Inc.*, 21 B.R. 323, 326 (Bankr.S.D.N.Y.1982); *The Liberal Market, Inc. v. Malone & Hyde, Inc.*, 14 B.R. 685, 690 (Bankr.S.D.Ohio 1981); *Matter of Mansour Medical Center*, 5 B.R. 715, 719, 6 B.C.D. 886, 2 C.B.C.2d 1363 (Bankr.W.D.Pa.1980). The Debtor thus makes no contention that there is not an identity of parties.

■ Once identity of parties is established, it must further be found that the claims raised in the two adversary proceedings, and the "nucleus of facts" which underlay them, are identical. *Expert Electric*, 554 F.2d at 1234. The crucial element underlying this requirement is the factual predicate of the two claims asserted, for it is the facts surrounding the claim which operate to constitute the cause of action, not the legal theory upon which a litigant relies. *Ibid.*

The Bank has claimed that the present adversary proceeding is identical to the discontinued Cosmonor adversary proceeding because both alleged voidable preferences received by the Bank and therefore, the same elements of a preference under § 547 of the Code would have to be proved. The Debtor counters this by drawing a distinction between the Cosmonor adversary proceeding, in which the preference challenge brought on by the Creditors' Committee concerned the transfer of collateral to the Bank, and the instant claim for the payment of a cash preference, which arises out of a series of transactions in which the Bank debited the Debtor's bank account for payment of past due interest.

■ While the Debtor's contradictory papers are not helpful on this point, it appears that the evidence which would be introduced on the two preference claims is different. The cross-claims of the Creditor's Committee in the Cosmonor adversary proceeding, had it not been discontinued by the Plan, would have involved evidence of the existence and validity of the Bank's security interest in the Debtor's "collateral", which is defined in the cross-claim as "... certain ... property having a value of approximately $300,000 to $400,000 [which was transferred] for the benefit of the Bank and for or on account of an antecedent debt owed by the Debtors to the Bank." Clearly this cross-claim was narrowly drafted to include only this "collateral" transferred pursuant to the Debtor's default on its loan, and not all of the Debtor's personal property. The claim now be-

fore us concerns the Bank's actions in debiting the bank account of the Debtor for interest payments. Ahlstroem Affidavit, Exhibit A.

Accordingly, since both preference actions arise from different facts, the Plan providing for the discontinuation with prejudice of all cross-claims asserted by the Creditors' Committee does not have res judicata effect upon this preference action, since the "same claim" is not asserted in both.

### III

### LACHES

The Bank alternatively presses its motion to dismiss on the ground of laches. For reasons set forth below, this argument is unpersuasive.

The doctrine of laches is based on the maxim that equity aids the vigilant and not those who slumber on their rights. 1 J. Story, *Commentaries on Equity Jurisprudence* 87 (14th ed. 1918). An equitable action is barred by laches under New York law where the defendant can show: (1) proof of delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowance of the claim. *Rapf v. Suffolk County of New York*, 755 F.2d 282, 292 (2d Cir.1985); *In re Diaz-Albertini's Estate*, 141 N.Y.S.2d 149, 154 (N.Y.Surr.Ct.1955).

Here, the Debtor did not file the preference action until the day of confirmation when it had knowledge of at least some of the preferential transfers since February and could have seemingly discovered the rest. There is no reason why the Debtor could not have filed its claim at that point and nowhere does the Debtor justify waiting till the day of confirmation to bring an action. Rather, the Debtor contends that the Bank had and withheld knowledge of the transfers prior to the confirmation. This assertion of withholding information is no excuse. The Debtor had bank statements apparently showing the transfers.

Moreover, knowledge of the transfer is hardly equivalent to knowledge of a claim. It is a claimant's obligation to raise its claims and not delay so as to avoid being barred by laches.

As to prejudice, the Bank argues that, in reliance on the Debtor's Disclosure Statement, it believed that no preferences had occurred. It further asserts that, had the instant adversary proceeding been maintained at an earlier point in time, the Bank would have been a creditor in the case, with the right to participate in the administration of the estate, negotiate and vote on the plan; in short, to participate fully as a creditor in a reorganization case. As to the Disclosure Statement, the Bank has shown no reliance. Rather than asserting that it was prejudiced, for example, by accepting the Plan, the Bank's claim is that it did not participate in the case. There is nothing that relates that prejudice to the Disclosure Statement.

More serious is the Bank's claim of having been disenfranchised. The Bank's principal prejudice is, however, that it would have to return money it was not entitled to under § 547 of the Code. This is not sufficient prejudice to invoke the doctrine of laches. *Matter of Silver Hill Frozen Foods, Inc.*, 23 B.R. 179, 182, 9 B.C.D. 786, 7 C.B.C.2d 443 (Bankr.W.D. Mich.1982). It is true that if the preference claims had been brought earlier and the Bank had surrendered the alleged preferences it would have been entitled to vote on the plan. Nevertheless, to rule in favor of the Bank solely on this basis would mean that every Chapter 11 debtor should conclude all preference claims prior to confirmation of a plan. The Bankruptcy Code contains no such requirement. Nor does extant authority, it being held only that the Code requires that a preference action be commenced by a debtor-in-possession prior to the confirmation, not that it be resolved. *In re Korvettes, Inc.*, 42 B.R. 217, 223, 12 B.C.D. 117, B.L.D. ¶ 69992 (Bankr.S.D.N.Y. 1984). Absent some more definitive prejudice, *e.g.*, that the vote of the preferred creditor would have changed the vote of

the class from acceptance to non-acceptance, latches should not operate to bar this claim.

## IV

## JUDICIAL ESTOPPEL

▪ Of more merit is the Bank's assertion that the equitable principle of judicial estoppel bars the Debtor's claim. Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position. *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895); *Allen v. Zurich Insurance Co.,* 667 F.2d 1162, 1166–67 (4th Cir.1982); *Scarano v. Central R. Co. of New Jersey,* 203 F.2d 510, 513 (3rd Cir.1953); *Texas Co. v. Gulf Refining Co.,* 26 F.2d 394, 397 (5th Cir.), *cert. denied,* 278 U.S. 625, 49 S.Ct. 27, 73 L.Ed. 545 (1928); *The Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1177–78 (D.S. C.1974); *American Home Assurance Co. v. American Fidelity & Casualty Co.,* 261 F.Supp. 734, 735 (S.D.N.Y.), *aff'd,* 356 F.2d 690 (2d Cir.1966). It applies whether the position first assumed has been successful, *Hughes v. Ward Oil Corp.,* 124 F.2d 393, 395 (5th Cir.1941), or not, *Texas Co. v. Gulf Refining Co.,* 26 F.2d at 396.

Based on the facts of the present case, it is clear that the Debtor now takes a position inconsistent to that taken in the Disclosure Statement where it represented that,

> The Debtor has discussed the nature of preferential payments and fraudulent conveyances with its counsel and accountants. The Debtor's management does not believe any preferences or fraudulent transfers have occurred....

First Amended Disclosure Statement at 18, Exhibit F to the Bank's Motion to Dismiss. The Debtor claims it did not know of the preferential transfer to the Bank when it prepared its Disclosure Statement. The Bank does not dispute this. Instead, the Bank claims that the Debtor's failure to amend its Disclosure Statement once it learned of the possibly preferential transfer estops the Debtor from litigating those preferences now.

The preparing and filing of a disclosure statement is a most important step in the reorganization of a Chapter 11 debtor. 5 *Collier on Bankruptcy,* ¶ 1125.01 (15th ed. 1985). It is relied on by both the creditors of the debtor before they vote on the plan of reorganization, and by the bankruptcy court before approving it. Given this reliance, it is crucial that a debtor be absolutely truthful so that the disclosure statement meets the Code standard in § 1125 of enabling "... a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan ..." 11 U.S.C. § 1125(a)(1). The legislative history of § 1125 states that what constitutes "adequate information" will be determined by the facts and circumstances of each case in the discretion of the bankruptcy court. H.R.REP. No. 95–595, 95th Cong., 1st Sess. 408 (1977), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 6364; S.REP. NO. 95–989, 95th Cong., 2d Sess. 120 (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5906. It is clear, however, that in all cases, facts which inform claimants about the financial results of acceptance or rejection of a plan, must be included. *In re Stanley Hotel,* 13 B.R. 926, 929, 8 B.C.D. 35, 5 C.B.C.2d 64 (Bankr.D.Colo.1981); *cf. In re J.E. Jennings, Inc.,* 46 B.R. 167, 170, 12 B.C.D. 905, B.L.D. ¶ 70262 (Bankr.E.D.Pa.1985) (no financial harm to creditors where preference action not stated in Disclosure Statement, since the court had retained jurisdiction, and any recovery of additional funds would go to creditors). The necessary implication of this is that a debtor amend its disclosure statement, when necessary to be fully accurate.

The Debtor readily admits of its knowledge in February 1985 of at least $22,000.00 of the allegedly preferential transfers. Affidavit of John J. Preefer at 3–4; Affidavit of Bernth Ahlstroem at 4. It, however, did not seek to amend the Disclosure Statement and bring an adversary proceeding to recover these transfer until the day of confirmation of its Plan on April 25, 1985. Further, it offers no explanation

for failing to have looked at other bank statements and thereby finding the remaining $80,000.00 in alleged preferences. The Debtor advances no palatable reason for allowing this Court to confirm a Plan solicited on the basis of palpably erroneous statements of which the Debtor had actual knowledge and which makes no provision for the payment of recovery of preference claims to creditors. Unlike *Jennings,* 46 B.R. at 170, here the vote of the creditors was sought with respect to a Plan which provided for the Debtor to receive the benefit of preference claims. Absent retention of jurisdiction by the bankruptcy court, § 1141(b) of the Code provides that confirmation of a plan vests all property of the estate in the debtor, including such claims. *E.g., In re Oceana International, Inc.,* 376 F.Supp. 956, 962 (S.D.N.Y.1974). In short, a post-confirmation preference avoidance will benefit the debtor, not its creditors, as the Debtor candidly acknowledges. Ahlstroem Affidavit at 5.

■ Rather than offering some explanation or justification for this behavior, the Debtor and its new counsel assert that the Bank was not "prejudiced in any material way" and, therefore, it should not receive the benefit of the doctrine of judicial estoppel. Debtor's Post-Argument Memo at 4. This argument is without merit. The doctrine does not depend upon prejudice to the party invoking it. As the court in *Melton v. Anderson,* 32 Tenn.App. 335, 222 S.W.2d 666, 669 (Tenn.Ct.App.1948) stated:

> [Judicial estoppel] rests solely on public policy which exalts the sanctity of the oath. The object is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and fake swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings.

■ Accordingly, in order to preserve the integrity of disclosure statements given the reliance that Congress, in enacting § 1125 of the Code, clearly expected creditors to give them, we hold that a debtor who stated in its disclosure statement that it has no preference actions and thereby

implies that it investigated the possibility of such claims, and failed to amend its disclosure statement upon discovering same may not thereafter reverse its field and commence a preference action for its own benefit. The Bank's motion to dismiss the amended complaint is granted.

IT IS SO ORDERED.