**ONEIDA MOTOR FREIGHT, Plaintiff,**

v.

**UNITED JERSEY BANK, Defendant.**

**Civ. A. No. 87–1440.**

United States District Court,
D. New Jersey.

July 6, 1987.

Klinger, Nicolette, Mavroudis & Honig, Allan H. Klinger, Oradell, N.J., for plaintiff and third party defendant.

Clapp & Eisenberg, P.C., William S. Katchen, Newark, N.J., for defendant.

## OPINION

SAROKIN, District Judge.

In this action by a bankrupt trucking company against its bank for breach of contract and misrepresentation, defendant United Jersey Bank moves to dismiss the complaint.

### BACKGROUND

Plaintiff Oneida Motor Freight, Inc. (Oneida), a New York corporation founded in 1935, engaged in interstate trucking in the northeastern United States. On March 28, 1984, Oneida and defendant United Jersey Bank (the Bank) entered into two agreements: a Revolving Credit Agreement, whereby the Bank would extend up to $5 million in credit to Oneida through loans and letters of credit; and an Accounts Receivable Loan and Security Agreement, whereby the Bank would lend Oneida a percentage of Oneida's accounts receivable, with the Bank obtaining a security interest in Oneida's accounts, equipment, and inventory.

In February 1985, Oneida settled a dispute with Dorn's Transportation, a company that Oneida was acquiring. Oneida, to pay its part of the settlement, called upon the Bank to pay certain outstanding letters of credit. According to Oneida, the Bank unilaterally withdrew the necessary funds from Oneida's operating accounts, rather than charging against the letters of credit as had been previously agreed. Thereafter, Oneida's account became habitually overdrawn and experienced deposits of uncollected funds. The Bank, however, repeatedly honored Oneida's overdrafts.

On July 2, 1985, the Bank requested that third-party defendant Donald Singleton, the owner of Oneida, personally guarantee Oneida's debt. Mr. Singleton refused. On July 5, 1985, the Bank ceased honoring Oneida's checks, including over $1 million in recently issued payroll checks. According to Oneida, the dishonor of these checks compelled it to file a Chapter 11 bankruptcy petition on July 10, 1985. Oneida, in a schedule filed with the petition, acknowledged an undisputed, liquidated, and non-contingent debt to the Bank of $7.7 million. Oneida immediately ceased operations and proceeded with a liquidation.

On July 11, 1985, the Bank filed a motion for relief from the automatic stay, to enforce its security interest, and for other relief. The Bankruptcy Court, by orders dated January 14 and March 3, 1986, established the extent and validity of the Bank's lien at over $7.6 million.

Also on July 11, 1985, Oneida moved for authority to use cash collateral of the Bank. On September 30, 1985, the Bank-

ruptcy Court entered a Stipulation and Order confirming the parties' settlement of this application. The order provided for Oneida's use of up to $1.5 million in the Bank's cash collateral and the Bank's release of certain liens, expressly conditioned upon Oneida's payment by October 3, 1985 of over $6.6 million due to the Bank.

On May 12, 1986, Oneida filed an Amended Joint Plan of Reorganization under Chapter 11 in the Bankruptcy Court. The plan includes the Bank's deficiency claim, as a Class 9 creditor, for over $270,000. No objection to this claim has been filed. On August 14, 1986, the Bankruptcy Court entered an order confirming the amended joint plan.

On March 11, 1987, Oneida filed a complaint against the Bank in the Superior Court of New Jersey, Law Division, Bergen County, alleging breach of the financing agreements and misrepresentation surrounding the Bank's failure to honor Oneida's July 1985 checks. On April 15, 1987, the Bank filed a third-party complaint against Donald Singleton.[1] On April 20, 1987, the Bank removed this matter to this court pursuant to 28 U.S.C. § 1452(a).

The Bank moves to dismiss the complaint under Rules 12(b)(6) and 12(c).

DISCUSSION

The Bank's primary argument for dismissal,[2] though made in several forms is that the prior proceedings of the bankruptcy court preclude Oneida's current claims.

At first blush, the determination of which law governs this issue appears straightforward—a federal court applies federal rules to determine the preclusive effect of a prior federal question judgment of another federal court. *See Seven Elves,*

*Inc. v. Eskenazi,* 704 F.2d 241, 243 n. 2 (5th Cir.1983); C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4468 (1981 & Supp.1986).

■ In applying this rule, however two questions arise. First, was the original judgment of the bankruptcy court a "federal question" judgment? Yes, answers the court. Though the bankruptcy court had to make some subsidiary state law determinations (such as the validity of the Bank's security interests), the court's orders were in the context of a Chapter 11 reorganization governed by federal bankruptcy law. Second, is it relevant that the current federal action, removed from state court, involves adjudication solely of state law claims? No, answers the court. Even if this action had not been removed, the state court would be bound by federal law in determining the preclusive effect of the bankruptcy court's federal question rulings —thus, *Erie* concerns of inconsistent state and federal results are not present.

The court, therefore, applies federal rules of preclusion to the Bank's motion.

As stated above, the Bank's principal contention is that the prior bankruptcy proceedings preclude Oneida's current claims. The "claim preclusion" branch of the *res judicata* doctrine, in part, bars relitigation of claims actually litigated in a prior proceeding. In this matter, however, plaintiff's state law claims have never been actually litigated—they were neither presented nor adjudicated in any bankruptcy proceeding.[3] The *res judicata* doctrine, however, also precludes any claim which might have been included in that action. *See, e.g., Donegal Steel Foundry Co. v. Accurate Prods. Co.,* 516 F.2d 583, 587 (3d Cir.1975);

---

1. The court, by order dated June 24, 1987, granted Singleton's motion to dismiss the third-party complaint.

2. The Bank moves pursuant to Rules 12(b)(6) and 12(c). Oneida contends that the motion is properly understood as a Rule 56 motion for summary judgment because the Bank relies on materials outside the pleadings, namely pleadings and orders from the bankruptcy court. The court finds the dispute irrelevant. Before the court is a legal question regarding the preclusive effect of the bankruptcy proceedings.

The Bank may prevail on this motion if the current record supports a finding of preclusion. No discovery is necessary for Oneida to defend against the Bank's *res judicata* arguments.

3. Therefore, the Bank's collateral estoppel argument fails. The issues involved in plaintiff's claims were not actually litigated in the bankruptcy court, as would be required for collateral estoppel (or "issue preclusion") to apply. *See, e.g., Haize v. Hanover Ins. Co.,* 536 F.2d 576, 579 (3d Cir.1976).

*Recchion v. Kirby,* 637 F.Supp. 284, 286 (W.D.Pa.1985). The Bank's preclusion argument, in essence, is that Oneida's failure to raise its contract and misrepresentation claims in the bankruptcy proceedings bars the current suit.[4]

The Bank, to prevail on its res judicata argument, must demonstrate 1) that the bankruptcy proceedings constitute a final judgment on the merits; 2) that these proceedings involve the same parties as the current suit; and 3) that the current suit is based on the same "cause of action" as that adjudicated in the bankruptcy court. *See Purter v. Heckler,* 771 F.2d 682, 690 (3d Cir.1985); *United States v. Athlone Inds.,* 746 F.2d 977, 983 (3d Cir.1984).

Under this framework, the Bank's argument hinges on whether plaintiff's current claims and the claims presented to the bankruptcy court are part of the same "cause of action."[5] The Third Circuit has explained its approach to this elusive concept.

> Although we declined to adopt *one* specific legal theory in [*Davis v. United States Steel Supply,* 688 F.2d 166 (3d Cir.1982) (en banc), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) ], we indicated a predisposition towards taking a broad view of what constitutes identity of causes of action—"an essential similarity of the underlying events giving rise to the various legal claims." We therefore do not adhere to any mechanical application of a single test but instead focus on the central purpose of the doctrine of res judicata. We are thus keeping with "[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence."

*United States v. Athlone Inds.,* 746 F.2d 977, 984 (3d Cir.1984) (citing 1B J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 0.410[1], at 359 (2d ed. 1983)). Restatement (Second) of Judgments § 24(1) represents the "present trend," and states that a judgment in a prior action extinguishes any claims "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

■ The court, applying this broad transactional view, finds that Oneida's current claims and the claims presented in the bankruptcy court, are parts of the same "cause of action." Oneida contends that the claims involve different transactions— its current claims for breach of contract and misrepresentation focus on the Bank's conduct in failing to honor overdraft checks, while the bankruptcy proceedings centered on the creation of the bank's security interest and the validity of that interest. The court finds, however, that at the least, the claims arise from "a series of connected transactions," thus satisfying the Restatement test. *See Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 871 (5th Cir.1984) (applying the Restatement position in a bankruptcy context).

Oneida contends, though, that *res judicata* cannot bar its current claims because it had no opportunity to raise those claims in the bankruptcy proceedings.

As an initial matter, the bankruptcy court would have had subject matter jurisdiction to hear Oneida's state law claims. A bankruptcy court may hear "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). "Core proceedings" specifically include "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).

Oneida argues, however, that it could not have raised, or was not obligated to have

---

**4.** That the Bank's motion turns on the question of which claims should have been litigated in a prior federal bankruptcy proceeding supports the court's ruling that federal rules of preclusion apply to this motion. Thus, the court does not apply the New Jersey "entire controversy" doctrine.

**5.** There is no dispute that the bankruptcy orders constitute final judgments on the merits in a prior suit between the same parties.

raised, its claims in any of the proceedings which resulted in orders of the bankruptcy court. With respect to the August 14, 1986 order confirming the amended joint plan of reorganization, plaintiff contends that the "Reservation of Claims" provision [6] makes plain that it had no obligation to raise its fraud claims in the confirmation proceedings. With respect to the proceedings resulting in the orders establishing the validity of the Bank's lien,[7] Oneida contends that a counterclaim could not have been properly brought such proceedings. Oneida's position is that the Bank initiated these proceedings as a motion for relief from the automatic stay under § 362; that such a motion is a "contested matter" under Bankruptcy Rule 9014; that Rule 7013, dealing with compulsory counterclaims, is not applicable in such a proceeding; and that, even if counterclaims are permissible, "the defensive and informal nature of [§ 362] stay litigation should ... preclude the formal assertion of counterclaims." 2 Collier on Bankruptcy ¶ 362.08[3], at 362–67 (15th ed. 1986).[8]

Oneida's contentions, even if accepted, do not rebut the Bank's *res judicata* argument. As stated above, that doctrine requires that "a plaintiff present in one suit all the claims for relief" that he may have arising from a transaction. *See United States v. Athlone*, 746 F.2d 977 (3d Cir.1984) (citation omitted). Though Oneida is not the "plaintiff" in all the proceedings involved here,[9] Oneida was under an obligation—to the court, to the Bank, and to its creditors—to raise its claims against the Bank in the bankruptcy proceedings.[10]

Oneida does not and cannot contend that it had no opportunity during the bankruptcy proceedings to advise the court or the Bank of its intent to bring these claims. The bankruptcy court, if so advised, could have determined the proper procedural mechanism for Oneida to pursue its claims. The Bank, if so advised, could have (and represented at argument that it would have) objected to the confirmation of the reorganization plan. Under these circumstances, Oneida's failure violates a fundamental principle of current preclusion doctrine—that courts and parties should be able to rely on a final judgment as the end of all litigation with respect to a particular transaction or occurrence.

Oneida's current claims against the Bank arise from the same transaction, or series of connected transactions, as was the subject of extensive prior bankruptcy proceedings between these parties. Oneida's failure to bring to the court's attention claims against the Bank, of which Oneida was aware before the bankruptcy proceedings commenced, bars its current action.

CONCLUSION

A debtor in a bankruptcy proceeding owes a special duty of disclosure to the court and creditors. Decisions are made by both predicated upon such disclosures by the debtor. Even absent a specific duty to file a claim or counterclaim, it is difficult to envision that a debtor can decline to reveal the existence of a claim and the intent to pursue it, particularly when it asserted against a named creditor.

---

6. Article XII of the amended plan reads:
   All claims and causes of action in favor of the Debtor and Debtor-in-Possession not expressly released or terminated in accordance with the Plan are hereby preserved and may be prosecuted by the Debtor or the Creditor's Committee after entry of the Confirmation Order.

7. These are the orders of January 14 and March 3, 1986, and the September 30, 1985 stipulation and order of settlement in connection with Oneida's application to use cash collateral.

8. The Bank contends that its application, which also sought a determination of the validity of its lien, is properly considered as an "adversary proceeding" under Rule 7001, in which Oneida would have had the opportunity and obligation to bring its counterclaims under Rule 7013.

9. For example, the Bank moved for relief from the stay and for a determination of the validity of its lien; Oneida, if it had raised its claim, would have done so defensively as a counterclaim.

10. Oneida, at argument, stated that it advised the creditors', at their first meeting, of its bad faith and contract claims against the Bank. The court holds that Oneida, by such action, cannot be said to have raised its claims in the bankruptcy proceeding.

The court grants defendant United Jersey Bank's motion to dismiss plaintiff's complaint.