**In re Ray A. HOFFMAN, Jr., Debtor.**

**Ray A. HOFFMAN, Jr., Plaintiff,**

**v.**

**FIRST NATIONAL BANK OF AKRON, IOWA and Does, John I through XX, inclusive, Defendants.**

**Bankruptcy No. L85–02504S.**
**Adv. No. L88–0252S.**
**Misc. No. 89–4013.**

United States District Court,
N.D. Iowa, W.D.

April 14, 1989.

John Harmelink, Yankton, S.D., for debtor.

Craig Raby, Sioux City, Iowa, for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

The court is in receipt of the Memorandum and Proposed Order received in this case from the Honorable Michael Melloy, Chief Bankruptcy Judge, Northern District of Iowa. The court has been apprised that this matter is a non-core proceeding as contemplated by rule 9033 of the Bankruptcy Rules. The court has been apprised that the clerk of the bankruptcy court has

served copies on all parties by mail; that under rule 9033(b) any party may within ten days after being served with a copy of the proposed order file any written objections which they may have to said proposed order. Said notices have been mailed, the ten days has passed, and no objections have been filed.

For good cause shown,

IT IS ORDERED that this court, pursuant to rule 9033(d), hereby accepts and adopts the Memorandum and Proposed Order and directs that the clerk of court shall enter judgment as set out in said proposed order.

## MEMORANDUM AND PROPOSED ORDER

### Re: Motion to Dismiss

MICHAEL J. MELLOY, Chief Judge.

This adversary proceeding is before the Court on the Defendants' Motion to Dismiss. The motion is made with regards to Plaintiff/Debtor Ray Hoffman's petition originally filed in state court against Defendant/Creditor First National Bank of Akron. The Defendant removed the case to federal bankruptcy court and has moved to dismiss the petition. The Court submits the following proposed Findings of Fact, Conclusions of Law and Order pursuant to F.R.B.P. 9033.

## I. PROPOSED FINDINGS OF FACT AND BACKGROUND

Plaintiff Ray A. Hoffman, Jr. (Debtor) voluntarily filed bankruptcy on December 4, 1985. On June 16, 1986, the Debtor filed his disclosure statement and proposed plan of reorganization. During the course of the next year, Debtor filed various attachments and amendments to both his disclosure statement and proposed plan of reorganization. A third plan of reorganization was filed on June 25, 1987 and confirmed on July 21, 1987.

The Debtor's principal creditor was First National Bank of Akron, Iowa (Bank). The Bank was owed nearly $250,000 by the Debtor. The plan which was eventually filed and confirmed in this case was in great part the result of negotiation and agreement between the Bank and the Debtor. The Debtor and the Bank jointly filed a detailed seven page stipulation encompassing the agreement that the parties had reached concerning the debt owed to the Bank. This agreement was adopted verbatim by the Debtor in his plan as the proposed treatment of the Bank. Pursuant to the agreement the Bank voted for the plan which was ultimately confirmed.

On October 5, 1988, the Debtor filed suit in Iowa District Court in and for Plymouth County against the Bank on various counts including fraud, violation of fiduciary duties, misrepresentation, negligence and bad faith. Collectively, these counts constitute a cause of action generally known as a lender liability lawsuit. The lender liability lawsuit alleges that between 1980 and 1985 the Bank was guilty of various acts or omissions which ultimately led to the filing of Debtor's Chapter 11 petition on December 4, 1985.

On October 14, 1988, the Bank moved in state court to dismiss the petition. On October 24, 1988, the Bank filed this adversary proceeding and timely[1] removed the state court action to this Bankruptcy Court pursuant to 28 U.S.C. § 1452. On October 26, 1988, the Bank moved to dismiss the removed action against them in Bankruptcy Court. On December 6, 1988, a hearing was held for oral arguments regarding the Motion to Dismiss. At the hearing on the Motion to Dismiss, the parties stipulated that the Court could take judicial notice of the documents and filings contained in the Debtor's Chapter 11 case.

A review of the court file shows that the Debtor did not disclose the existence of his lender liability claim against the Bank in his Schedules, Disclosure Statement or Proposed Plan of Reorganization or any of the various amendments or attachments to those documents. Schedule A–2 filed with Debtor's initial filing does not indicate that the Bank's claim was disputed, contingent or unliquidated. Likewise, throughout the

---

**1.** *See* Bankruptcy Rule 9027(a)(3).

proceedings leading up to the confirmation of Debtor's plan, including various stay litigation, there was never any indication given by the Debtor that the Bank's claim was in dispute. In the agreement between the Debtor and the Bank, the Debtor acknowledged that his "current obligation to the Bank" as of the date of filing bankruptcy, was $239,165.66. Additionally, the Debtor further acknowledged "that the Bank is properly perfected as to all the Debtor's livestock, machinery, ... real estate, ... and government deficiency payments...." Stipulation and Order, April 22, 1986 (references to exhibits omitted). Subsequent to the confirmation of the plan and the initiation of the lender liability lawsuit, the Debtor has not moved to amend the disclosure statement or plan of reorganization to include the potential proceeds from the cause of action in the bankruptcy estate.

It is somewhat unclear when the Debtor became aware of the potential cause of action. Debtor's attorney indicated that at the time the bankruptcy case was commenced in 1985 they had no knowledge as to the potential cause of action. At the hearing on December 6, 1988, Debtor's attorney represented to the Court that Debtor would testify that the first time discussions were held between Debtor and Debtor's counsel about the potential claim against the Bank were after confirmation of the plan. *See* Tr. of December 6, 1988 Hearing, p. 18:2–5.

The court file indicates this statement by the Debtor's attorney is not true. On September 10, 1987, Debtor's attorney filed his final fee application. In that fee application, there is an entry for June 4, 1987, concerning an office conference between Debtor's counsel and the Debtor "... re: Possible lawsuit against Bank." Between that date and the date the plan was ultimately confirmed (July 21, 1987), there are various entries for reviewing and revising the third plan of reorganization as well as entries for research and office conferences concerning the potential lawsuit against the Bank. Research and other work on the lawsuit against the Bank continued for two or three weeks following the confirmation of the plan, including drafting of the petition against the Bank on August 5, 6, and 10. The Court must conclude from those entries that the Debtor was aware prior to the drafting and revising of the third amended plan, the plan which was ultimately confirmed in this case, that there was at least the potential of a claim against the Bank.

## II. DISCUSSION

### A. *Jurisdiction: Core or Non–Core Related Proceeding*

The first issue facing this Court is whether the Court has jurisdiction to issue a final order in this case, i.e. whether this is a core or non-core related proceeding. In a non-core related proceeding, the Bankruptcy Court is to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions...." 28 U.S.C. § 157(c)(1). This Court does have the authority to determine whether a proceeding is core or a non-core related proceeding. *See* 28 U.S.C. § 157(b)(3).

■ Debtor's lender liability claim is in this Court by virtue of the Defendant Bank's removal. The motion to dismiss which is presently before the Court is a defense to the lender liability claim. To determine core or non-core status, the Court must look to the substantive action before it.[2] *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987) (Focusing on plaintiff's suit to determine core or non-core status, not on defendant's defenses). Although the defense requires this Court to construe

---

**2.** This is analogous to determining whether federal subject matter jurisdiction exists based on the plaintiff's "well-pleaded complaint," not the defense's arguments. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) ("[A] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

the order confirming the plan, the substantive action, i.e. the lender liability action, does not require the construction of any past orders of this Court. Indeed, a lender liability action does not specifically fit within any of the core proceedings listed in 28 U.S.C. § 157(b)(2), unless brought as a counterclaim or considered to fall within one of the "catchall" provisions, § 157(b)(2)(A) "matters concerning the administration of the estate" or § 157(b)(2)(O), "other proceedings affecting ... the adjustment of the debtor-creditor ... relationship." *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 75 B.R. 235, 238 (D.N.J.1987), *aff'd* 848 F.2d 414 (3rd Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988).

The Eighth Circuit has cautioned against adopting a broad approach to the "catchall" provisions of 28 U.S.C. § 157(b)(2). *In re Cassidy Land and Cattle Co., Inc.*, 836 F.2d 1130, 1132 (8th Cir.1988) (*citing Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987)) *cert. denied*, — U.S. —, 108 S.Ct. 2016, 100 L.Ed.2d 603 (1988). The *Wood* court set forth a narrow view of the core/non-core distinction:

> [A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. [If t]he proceeding before us does not meet this test, [then] accordingly, [it] is a non-core proceeding."

*Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

Thus, although the lender liability action could fit within the broad provision of "matters concerning the administration of the estate," the action is precisely the sort that should not be found to fit within that section in order to effectuate the Supreme Court's decision in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Applying the *Wood* test, Debtor's lender liability action is a non-core proceeding. The action does not "invoke a substantive right provided by title 11," nor "by its nature, could [it] arise only in the con-text of a bankruptcy case." The lender liability action is based solely on state law. The action could have been brought regardless of whether the bankruptcy had been filed. The lender liability action is thus very similar to the cause of action the Supreme Court considered in *Northern Pipeline*. In the *Northern Pipeline* case, the United States Supreme Court held that the bankruptcy court did not have jurisdiction to decide the issues involved in a contract dispute which was governed by state law. *See also In re T.R. Paris & Family, Inc.*, 89 B.R. 760, 766 (Bankr.S.D.Ill.1988) (Focusing on the "substance of debtor's action," the court found the debtor's lender liability action to be a non-core proceeding).

Because this is a non-core proceeding, the proceeding must be "related to a case under title 11" for this Court to hear it. 28 U.S.C. § 157(c)(1). The Eighth Circuit Court of Appeals has adopted a broad test for determining when a proceeding is "related to a case under title 11: "The test ... is whether the outcome of th[e] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987) (citations and emphasis omitted). If Debtor were to win a two million dollar judgment against the Bank, that proceeding would have a "conceivable effect on the estate being administered," notwithstanding Debtor's protestations that the estate no longer exists.

The Court finds that this is a non-core related proceeding. The Debtor has not consented to this Court entering a final order. *See* 28 U.S.C. § 157(c)(2). The Court, therefore, submits the following Memorandum and Proposed Order together with the Court's Proposed Findings of Fact and Background, which constitute this Court's Proposed Findings of Fact, Conclusions of Law and Order, to the District Court for its ultimate resolution of the case.

### B. *Motion to Dismiss*

#### 1. Failure to Disclose the Cause of Action

A number of courts have been faced with debtors who fail to disclose a lender liabili-

ty action during the course of their bankruptcy case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988); *Continental Illinois National Bank & Trust Co. v. Windham*, 668 F.Supp. 578 (E.D. Texas 1987) *reconsid. denied* 685 F.Supp. 152 (E.D.Tex.1988); *Natco Indus. Inc. v. Federal Insurance Co.*, 69 B.R. 418 (S.D. N.Y.1987), *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G. (In re Galerie Des Monnaies)*, 62 B.R. 224 (S.D. N.Y.1986) *aff'g* 55 B.R. 253 (Bankr.S.D.N.Y.1985); *see also Monroe County Oil Co. v. Amoco Oil Co.*, 75 B.R. 158 (S.D.Ind. 1987) (claim for breach of insurance contracts). The facts in *Oneida Motor Freight, Galerie Des Monnaies* and the present case are all similar. The debtors filed their schedules, disclosure statements and plans of reorganization and amendments thereto without ever disclosing to the court or to any creditors that there was a potential cause of action against the lender. Extensive negotiations to work out a confirmable plan were entered into between the debtor and lender (who was eventually sued). A plan of reorganization was worked out and subsequently confirmed, with the lender voting for acceptance for the plan. A short time after the plan is confirmed, the debtor institutes a lawsuit against the lender. The debtor may or may not amend their plan to take into account the potential proceeds from this lawsuit.

The leading case regarding the effect of the failure to disclose a cause of action is *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Debtor conceded at oral argument that the facts at hand are indistinguishable from the facts in the *Oneida Motor Freight* case. In his posttrial brief, however, Debtor back-tracked on this concession and attempted to distinguish the *Oneida Motor Freight* case. The Court finds that such attempts to distinguish *Oneida Motor Freight* are futile.

First, Debtor attempts to distinguish *Oneida Motor Freight* by saying that in the present case, the Debtor was not aware of his claim at the date of filing, whereas in *Oneida Motor Freight* the debtor acknowledged that it had a claim against the creditor on the date of filing. The Court finds that this is not a valid reason to fail to disclose the claim. The Debtor knew of all of the facts that were pertinent to its current lawsuit when it filed bankruptcy. No new information was acquired post-filing other than counsel's purported discovery of a legal basis for the lawsuit. The facts underlying the cause of action were known to Debtor long before the plan was confirmed. The Court file shows that the Debtor and Debtor's counsel were discussing a lawsuit against the bank prior to confirmation of the third amended plan. Debtor had a duty to amend his schedules to reflect this claim and to disclose the existence of the potential cause of action to creditors in his plan and disclosure statement.

Second, Debtor points out that the percentage of unsecured debts that the Bank's claim represents is significantly less than the defendant lender in *Oneida Motor Freight*. Debtor states: "The Bank's unsecured claim represents approximately 70 percent of the total unsecured claims. Without the Bank's affirmative vote as an unsecured creditor, the Debtor's plan cannot be confirmed.... Any complaint or counter claim filed by Debtor during his Chapter 11 proceeding would have voided any possibility of a successful reorganization." Plaintiff's Brief, pp. 5–6. This is not a valid ground for distinguishing *Oneida Motor Freight*. The Debtor's figures are not accurate; the file shows that the Bank only had about 40% of the unsecured claims. However, even if the percentages the counsel for Debtor asserts were accurate, it supplies no excuse for failing to disclose the claim. Essentially, the Debtor argues that fraudulent conduct by a debtor in order to obtain confirmation of a plan is acceptable behavior.

The dissent in the *Oneida Motor Freight* case argued against the majority's result mainly on the grounds that the holding would hurt the unsecured creditors, who

may have received something if the lender liability action were successful. The debtor in the *Oneida Motor Freight* case had modified its plan to include proceeds from a successful cause of action to benefit the unsecured creditors. However, even that argument is not applicable to this case. The Debtor maintains that the unsecured creditors do not deserve any of the benefits of the proceeds that may be received in the lender liability action. Debtor argues it is only because of the efforts of Debtor and Debtor's counsel that there may be any proceeds to divide. Consequently, he believes that the unsecured creditors should not share in the benefits of the lawsuit, if successful, even though the unsecured creditors are to receive only a 50% dividend under the confirmed plan.

The *Oneida Motor Freight* case and other cases cited above rely on various theories for dismissing debtor's lender liability actions on the failure to disclose causes of actions, including equitable estoppel, judicial estoppel, *res judicata*, and general equitable principles. The Court finds each theory applicable in this case.

### a. *Equitable Estoppel*

■ "[A] debtor must disclose any litigation likely to arise in a non-bankruptcy contest. The result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." *Oneida Motor Freight,* 848 F.2d at 417 (citations omitted). The doctrine of equitable estoppel requires the following elements to be established:

(1) a misrepresentation or concealment of material facts by the other party,

(2) lack of knowledge of the true facts by the party to whom the misrepresentation is made,

(3) an intent to cause reliance on the misrepresentation, and

(4) actual reliance on the misrepresentation to the detriment of the party to whom the representation was made.

*International Harvester Credit Corp. v. Leaders,* 818 F.2d 655, 659 (8th Cir.1987) (citation omitted). Applying the *International Harvester* requirements of equitable estoppel, the Bank has plainly met its burden of proof on this issue. The Debtor concealed a material fact from the Bank, namely, that a lawsuit would be filed against the Bank. The Bank lacked knowledge of this fact and had no way of ascertaining it. Only the Debtor knew whether he would file an action, unless he would have disclosed the fact in the disclosure statement or informed the Bank of it at some other time.

Debtor asserts that his disclosure statement should have provided sufficient notice to the Bank, in that Debtor stated that his "creditors forced him to sell part of his farm equipment and livestock." Debtor's Chapter 11 Disclosure Statement, p 2. Debtor also asserts that his statements on Official Form 8, Question 4.f, regarding inventory, should have put the Bank on notice. Question 4.f asks about dollar amount of inventory. Debtor's response: "Inventory one year ago would have been $150,000.00 higher, First National Bank forced a liquidation sale." Debtor made similar comments to questions regarding transfers of property and repossessions and returns. Official Form 8, Questions 14.b and 16. However, on Schedule A–2, Creditors Holding Security, Debtor did not indicate that the debt owed to the Bank was either disputed, contingent or subject to setoff. Likewise, on Schedule B–2, Personal Property, Debtor left blank Item q: "Contingent and unliquidated claims of every nature, including counterclaims of the debtor."

The Court finds that Debtor's statement that "creditors forced a sale," and that "First National Bank forced a sale," are insufficient to put the Bank on notice that a lender liability action would be commenced. This is especially true in light of the fact that the Debtor and the Bank worked out a detailed agreement, in which the Debtor acknowledged his "current obligation to the Bank" was $239,165.66 and that the Bank was properly perfected in various property. The Debtor's statements blaming the Bank for his problems are not notice of a lawsuit. To hold otherwise would greatly dilute the quality of disclo-

sure required to be set forth in the bankruptcy schedules and disclosure statement.

Debtor, through counsel, indicated in oral arguments and in a written brief that Debtor actually intended to cause the reliance on the misrepresentation, because that was the only way that the Debtor perceived that the Debtor could get a plan confirmed.

Finally, the Bank actually relied upon the misrepresentation, in that it would not have agreed to plan confirmation had it known of the Debtor's true intentions.

In this case, the Debtor failed to disclose information, thus causing a misrepresentation by silence. The *International Harvester* court also states that "silence may be the basis of an estoppel where there is a duty to speak." *International Harvester*, 818 F.2d at 659. Another court has noted that "[t]he duty to speak need not be a purely legal one, but may be founded on principles of ethics and good faith." *In re Ellison Assoc.*, 63 B.R. 756, 765 (S.D.N.Y. 1983) (citations omitted). In this case there was not only an ethical and good faith duty to speak, there was an affirmative, legal duty set forth in 11 U.S.C. § 1125, the duty to provide adequate information in the disclosure statement.

### b. *Judicial Estoppel*

Several courts have applied the doctrine of judicial estoppel in cases such as this. The difference between judicial estoppel and equitable estoppel is the focus of the two doctrines. "Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to prior litigation." *Oneida Motor Freight*, 848 F.2d 414, 419 (3rd Cir.) (citations omitted), *cert. denied,* —— U.S. ——,

109 S.Ct. 495, 102 L.Ed.2d 532 (1988). "Judicial estoppel lies when a party, after assuming a certain position in a legal proceeding, attempts to assume a contrary position. It applies whether the position first assumed has been successful or not." *Galerie Des Monnaies*, 55 B.R. at 259 (citations omitted). "Judicial estoppel is invoked in these circumstances to prevent the party 'playing fast and loose' with the courts, and to protect the essential integrity of the judicial process." *Galerie Des Monnaies*, 62 B.R. at 226 (citations omitted). *Accord Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d at 419 (Adopting doctrine of judicial estoppel as a basis for affirming district court's dismissal of debtor's lender liability action); *Reynolds v. C.I.R.*, 861 F.2d 469, 472–74 (6th Cir.1988) (Applying judicial estoppel against government in the context of a settlement agreement in a bankruptcy proceeding).

Assuming that the Eighth Circuit would find that judicial estoppel is a valid legal theory,[3] this case clearly calls for it. The Debtor has stated that one reason for nondisclosure of the lender liability claim was to ensure the Bank's vote in favor of the plan of confirmation. The Debtor stated that without the Bank's vote, the plan would be unconfirmable. Because the Debtor wanted to remain in farming, to reorganize and not liquidate, the Bank's favorable vote was viewed as essential. Hence, to secure that favorable vote, the Debtor "played fast and loose" with the Bank and with this Court. If a debtor has future plans for future litigation with a creditor, the creditor is entitled to know about it so that the creditor can plan its action in the bankruptcy case accordingly. Likewise, this Court is entitled to know

---

3. *See In re Air One, Inc.*, 75 B.R. 998, 1002 (Bankr.E.D.Mo.1987) ("[I]t is doubtful whether the doctrine of judicial estoppel has any vitality in this judicial circuit." *citing Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 n. 6 (8th Cir. 1987)). The *Total Petroleum* court stated: "The purpose of judicial estoppel is to protect the integrity of the judicial process. As we read the case law, this is tantamount to a knowing misrepresentation to or even fraud on the court. Further, the doctrine is not followed in a major-

ity of jurisdictions, partly because of its vague definition and partly because of a perceived conflict with the rule allowing parties to plead alternative legal theories." (Citations omitted).

This Court relies on judicial estoppel as an alternative grounds for dismissal, because the concerns the Eighth Circuit expressed in *Total Petroleum* are not present here. The *Total Petroleum* court was concerned with parties being able to effectively plead alternative legal theories; that concern is not present in this case.

about it, to assist the Court in making a fully informed decision about plan confirmation. Had the Debtor disclosed this potential claim to the Court and asked to go into state court to prosecute the claim, this Court may have granted the request. For the Debtor to stand before the Court and say that the reason for failing to disclose this claim was to ensure that his plan was confirmed is grounds in itself for dismissal.

### c. *Res Judicata*

■ The order of a bankruptcy court confirming a plan of reorganization "binds all creditors of the debtor to the terms of the plan." *In re Sanders,* 81 B.R. 496, 498 (Bankr.W.D.Ark.1987); *see Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 137–38, 83 L.Ed. 104 (1938); *In re Charterhouse, Inc.,* 84 B.R. 147, 154 (Bankr.D.Minn.1988). The confirmed plan binds the debtor as well as the creditors. The confirmed plan is *"res judicata* as to all questions pertaining to such plan which were raised or could have been raised." *Sanders,* 81 B.R. at 498. While the exact point in time at which the order of plan confirmation becomes final and the plan may not be modified is sometimes in question,[4] there is no question in this case that the order confirming the plan was final when the Debtor filed his state court action.

The reasons that the order confirming the plan is *res judicata* as to all questions which were raised or which could have been raised are straight forward and simple: "[T]o relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, ... encourage reliance on adjudication" and perhaps most importantly, finality. *Galerie Des Monnaies,* 55 B.R. 253, 256–57. At some point, the litigation must cease, and the parties need to know when that point is. *See Stoll v. Gottlieb,* 305 U.S. 165, 172, 59 S.Ct. 134, 138. All parties need to know what they are bound to. If the debtor is allowed to bind the creditor to the terms of the plan, but to deviate himself from those terms, then a fundamental unfairness results.

The conclusion that the lender liability action is barred by *res judicata* is also supported by the traditional four step analysis, as set forth in *Lovell v. Mixon,* 719 F.2d 1373 (8th Cir.1983). The doctrine bars a subsequent suit when:

(1) the first suit resulted in a final judgment on the merits;

(2) the first suit was based on proper jurisdiction;

(3) both suits involved the same cause of action;

(4) both suits involved the same parties or their privies.

*Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983).

The *Lovell v. Mixon* court also pointed out that "*[r]es judicata* or claim preclusion bars the relitigation of issues which were actually litigated or which *could* have been litigated in the first suit." *Lovell v. Mixon,* 719 F.2d at 1376 (emphasis in original, citations omitted). The claim against the Bank could have been litigated in the bankruptcy proceeding or outside the proceeding had the Debtor given notice of its intention to proceed. Thus, the fact that the first suit, i.e. the bankruptcy case itself, did not result in a final judgment on the merits regarding this lender liability action is irrelevant because the Debtor failed to bring this suit. The doctrine is "applied only when the party against whom the earlier decision is being asserted had a 'full and fair opportunity' to litigate the issue in question." *Id.* Without question, this proceeding meets these equitable requirements. Hence, the first element of the doctrine is satisfied.

The second and fourth elements of *res judicata* are clearly met. Jurisdiction was proper in this Court for the bankruptcy case. Both suits involve the same parties or their privies. Whether the Debtor or the debtor-in-possession is the proper party to bring this action, the Debtor is the same party as the debtor-in-possession.

The third element of *res judicata* is also satisfied. Debtor's petition alleging the

---

**4.** "Substantial consummation" of the plan is required before post-confirmation modification will no longer be available, hence when the order confirming the plan becomes final. "Substantial consummation" is defined in 11 U.S.C. § 1101(2), and has been satisfied in this case.

various counts of lender liability puts into issue the same facts which would also determine the validity of the debt owed to the Bank. The order confirming the plan took into account the validity of the debt owed to the Bank. Indeed, the parties stipulated to the validity of that debt. The facts which Debtor relies on in his lender liability action are substantially the same as those which created the debt. As the *Oneida Motor Freight* court noted, when determining whether the two causes of action are the same, the court should look to the "totality of the circumstances," to determine whether the primary focus of *res judicata* has been satisfied, that of "essential similarity in the underlying events." *Oneida Motor Freight,* 848 F.2d at 420 n. 5. "The crucial element underlying this requirement is the factual predicate of the two claims asserted ... not the legal theory upon which a litigant relies." *Galerie Des Monnaies,* 55 B.R. at 257. The doctrine of *res judicata* is "applied only when the party against whom the earlier decision is being asserted had a 'full and fair opportunity' to litigate the issue in question." *Lovell v. Mixon,* 719 F.2d at 1376. The Debtor has squandered his "full and fair opportunity to litigate the issue in question."

### d. *General Equitable Principles*

The general equitable principles upon which the Bank relies are those stated by the court in *Oneida Motor Freight,* in discussing 11 U.S.C. § 1125(b), which mandates a disclosure statement containing adequate information. The court there noted that "[t]he preparing and filing of a disclosure statement is a critical step in the reorganization of a Chapter 11 debtor." This duty is:

> [T]he pivotal concept in reorganization procedure under the Code.... The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court.... A strong interest to achieve finality pervades Chapter 11 arrangements.... This goal of finality was supported by the Supreme Court [which held] that confirmation of a plan acts to bar attempts by the parties to relitigate any of the matters that could have been raised during the bankruptcy proceedings.... Disclosure is important, in this case, not only to the bank as an adversary and as a creditor, but to the other creditors and to the bankruptcy court. Here, 'the silence' in the Oneida bankruptcy record concerning this present claim, as they say in the vernacular, 'is deafening.' ... We conclude that the reorganization plan presented by Oneida Motor Freight to the creditors for confirmation, lacking disclosure of the potential for recovery against the bank, was informationally deficient and not cured by the later modification.

*Oneida Motor Freight,* 848 F.2d at 417–18 (citations and footnote omitted).

The importance for the debtor to disclose everything, all of the debtor's assets and liabilities, is so important and so fundamental to a bankruptcy case, it cannot be overstated. The Code envisions knowledgeable creditor participation in the bankruptcy process. The Debtor sought to limit the amount of meaningful information the Bank possessed in order to manipulate the outcome of the bankruptcy case.

The Debtor argues that the dismissal of the petition would result in a windfall to the Bank, thus allowing it to profit from its past bad actions. The Court finds that to rule for the Debtor would likewise grant a windfall to the Debtor, at the expense of judicial integrity. The Debtor must take the burdens of bankruptcy, as well as the benefits.

The Court agrees with the creditor when it says that the Debtor's failure to disclose the possibility of this lawsuit is like failing to disclose a parcel of real estate and then subsequent to plan confirmation saying that the real estate vests solely in the Debtor. Such a result would be clearly inequitable and unjust. The provisions of § 1141 are not intended to encourage debtors to not disclose information, but are to resolve questions of property ownership subsequent to plan confirmation.

### 2. Standing

Defendant Bank asserts as an alternate ground for its Motion to Dismiss that the

Debtor is not the proper party to prosecute a lender liability action against the Bank. The Bank relies on the Iowa Supreme Court case of *Collins v. Federal Land Bank of Omaha,* 421 N.W.2d 136 (Iowa 1988). The plaintiffs in *Collins* sued their attorney for malpractice based on events that occurred prior to the filing of their bankruptcy petition. The *Collins'* plaintiffs brought the lawsuit individually in their own name rather than having the trustee of their Chapter 7 case bring the lawsuit. The Iowa Supreme Court found that the cause of action had accrued prior to the filing of bankruptcy, and hence was property of the estate pursuant to 11 U.S.C. § 541(a)(1). Accordingly, the Iowa Supreme Court dismissed the case, holding that the proper plaintiff in the case was the Chapter 7 trustee, not the debtors individually.

Debtor counters the Bank's first argument by arguing the following: Pursuant to the order confirming the plan of reorganization, there is no longer a bankruptcy estate. All property has revested in the Debtor individually, and hence any cause of action that was the property of the estate during the pendency of the bankruptcy case is now property of the Debtor individually by virtue of 11 U.S.C. § 1141(b). Therefore, Debtor's argument proceeds, Debtor individually is the proper party to prosecute the case, not the debtor-in-possession or the trustee of the case. Further, Debtor's bankruptcy is a Chapter 11, not a Chapter 7, as was the case in *Collins.* There was no trustee appointed in Debtor's case. Debtor was the debtor-in-possession pursuant to 11 U.S.C. § 1101(1), which defines the debtor-in-possession as the debtor. A debtor-in-possession has most of the functions and duties of a trustee. *See* 11 U.S.C. § 1107(a). Thus, Debtor's argument concludes, the Debtor is the correct party to bring the lawsuit by virtue of the preceding sections.

Because of the dispositive resolution of this matter on the ground that the Debtor failed to disclose a cause of action, the Court need not reach the merits of the Bank's argument regarding standing.

## ORDER

IT IS THEREFORE the proposed Order of this Court that the Plaintiff/Debtor's petition be dismissed.

ORDERED March 20, 1989.