STAPLETON, Circuit Judge,
dissenting:
Concern for Oneida’s numerous unsecured creditors compels me to dissent from the court’s disposition. Those creditors, as well as Oneida, stand to lose by virtue of that disposition. If Oneida had been able to foresee this court’s novel application of equitable and judicial estoppel, it would have been able to protect itself against the loss the court today imposes upon it. Oneida’s unsecured creditors, however, had no way of protecting themselves and should not be required to contribute towards a windfall for an alleged wrongdoer.
I.
The court professes to steer clear of the claim preclusion analysis that underlies the district court’s decision. It does so, however, only in the wake of an analysis sounding as much in claim preclusion as in the estoppel theories it embraces, and in a fashion which reflects, at most, only minor quibbles with the district court’s view. I therefore begin with a discussion of the claim preclusion issue.
In effectuating the indisputable public interest in finality in bankruptcy proceedings, courts apply ordinary rules of claim and issue preclusion in the bankruptcy context. See e.g. Miller v. Meinhard-Com- *421 mercial Corp., 462 F.2d 358, 360 (5th Cir. 1972); Virgin Islands Bureau of Internal Revenue v. St. Croix Hotel Corp., 60 B.R. 412, 414 (D.V.I.1986). Restatement (Second) of Judgments § 24(1) sets forth the general rule with respect to claim preclusion, stating that:
When a valid and final judgment rendered in an action extinguishes the plaintiff’s claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
The court is simply mistaken, as was the district court, to the extent it suggests that this principle directs the outcome reached in this case. Section 24(1) prohibits claim-splitting, which by definition occurs when a party who has once asserted a claim attempts to reintroduce the claim in another guise thereafter. Here, Oneida asserted no claim against the bank in the bankruptcy proceedings. Having made no previous attempt to pursue a claim against the bank, Oneida cannot now be said to be prosecuting, and forcing the bank to defend, a suit for the second time.
One might argue to greater effect that Oneida’s claims are precluded because Oneida did not file a counterclaim in response either to the bank’s proof of claim or to its motion to lift the automatic stay and determine the extent and validity of its lien. Section 22(2) of the Restatement (Second) of Judgments states:
A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
(a) the counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
(b) the relationship between the counterclaim and the plaintiff’s claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.
For me, analysis of this case under this applicable legal principle dispels any doubt about whether it is barred by claim preclusion. As the court acknowledges, no compulsory counterclaim statute or rule required Oneida to assert its claim in the bankruptcy proceedings. Because the bank’s motion to establish the validity and extent of its lien and to lift the automatic stay gave rise to contested, rather than adversary proceedings, Bankruptcy Rule 9014 governed and Fed.R.Civ.P. 13(a)[1] was inapplicable absent explicit court direction to the contrary. The court issued no such direction. Similarly, while the Code calls for the disclosure of claims, as we discuss hereafter, no Code provision requires that the debtor actually litigate in the bankruptcy proceedings any claim the debtor happens to have against one of its creditors.[2] Indeed, as noted in our subsequent discussion, Oneida’s reorganization plan provides by its very terms, See Article XII, App. at 146,[3] that all claims and causes of action of Oneida’s not expressly released or terminated in accordance with the plan may be prosecuted by Oneida or the Creditor’s Committee after entry of the confirmation order.
Nor can it be said that Oneida’s decision to prosecute its claims now, after the close of the bankruptcy proceedings, threatens to undermine a judgment of the bankrupt *422 cy court and thus that Oneida’s claims should be barred on that basis. See Restatement (Second) of Judgments § 22(2)(b).[4] While the court suggests that such a danger is presented by the facts of this case, I fail to see the logic of its argument. The bankruptcy court entered orders reflecting the undisputed facts that the bank had loaned Oneida more than $7.6 million, that Oneida was indebted to the bank to that extent, and that the bank’s lien on Oneida’s property securing that amount was valid. Oneida had no basis for contesting its debt to the bank or the validity of the bank’s lien and, accordingly, it did not contest the bank’s applications to the bankruptcy court. Oneida now seeks to prosecute behavior by the bank, occurring after the loaning of the $7.6 million, which Oneida believes was both impermissible and directly responsible for the circumstances that led to its bankruptcy. Resolution of the question of the propriety of the bank’s behavior in Oneida’s favor and entry of a judgment against the bank on Oneida’s claims would be entirely consistent with the determinations of the bankruptcy court that Oneida had a duty to repay the $7.6 million loaned to it and that the bank’s security interest had been perfected.[5] Accordingly, I would conclude that Oneida’s failure to raise its present claim as a counterclaim in the bankruptcy proceeding did not undermine the bankruptcy court’s orders.
Thus, I conclude that Section 22(2) of the Restatement sets forth the applicable rule of claim preclusion and that application of that rule to the facts of this case requires a conclusion that Oneida’s claim is not precluded.
II.
I would also reject the equitable and judicial estoppel theories on which the court places express reliance in foreclosing Oneida’s claims. The court’s reasoning, in short, is that Oneida forfeited its claims when it did not list them in its disclosures pursuant to § 521, which requires every debtor to file a schedule of assets, and § 1125, which imposes a similar obligation on a debtor soliciting acceptance of a reorganization plan. In my view, the court’s analysis and the remedy it endorses ignore the purposes of the Code’s disclosure requirements.
The Code’s disclosure requirements are intended to protect those creditors whom a debtor’s failure to disclose hidden assets would prejudice. A fortiori, a court’s response to nondisclosure should do likewise. Not only does the court fail to safeguard the interests of Oneida’s unsecured creditors, but it effectively penalizes them by foreclosing the prosecution of claims against the bank that would, if successful, result in a substantial enhancement of the estate and in their receiving more than the approximately thirty cents on the dollar for which they have been forced to settle. The only real winner in the case as decided is the bank, whom the court has relieved of *423 the responsibility of justifying its allegedly improper behavior.
The court does not explain why it finds more even-handed alternatives inadequate. I see no reason, for example, why we could not allow this suit to proceed and simply make reference to the fact that the bankruptcy court has jurisdiction to entertain motions to amend or rescind the debtor’s reorganization plan if such motions are brought by unsecured creditors who feel that Oneida’s nondisclosure has prejudiced them.[6] See § 350(b) (“A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.”). The availability of such a course of action would in most cases adequately deter nondisclosure. Section 1141(d)(3), which authorizes denial of discharge under certain conditions, provides additional deterrence, as does 18 U.S.C. § 152 which makes it a crime, among other things, to “knowingly and fraudulently [conceal] ... any property belonging to the estate of a debtor.” See e.g. 3 Collier on Bankruptcy ¶ 521.02 (15th ed. 1986) (suggesting that concealment of an asset is subject to denial of discharge or criminal sanctions pursuant to 18 U.S.C. § 152).
Moreover, this case stands in marked contrast to the circumstances under which estoppel has traditionally been invoked. Here, Oneida never represented that it would not press a claim against the bank. On the contrary, starting with its initial disclosure statement and continuing throughout the Chapter 11 proceedings, Oneida made clear that it thought it had been mistreated by the bank.[7] Having announced its displeasure at the outset, Oneida actively preserved its right to file claims. When the bank sought a general release in connection with the order establishing the extent and validity , of its lien, for instance, Oneida’s counsel wrote:
While we would have no objection to an amendment of the Order to, in effect, delete the handwritten portion of the Order which was included per Judge De-Vito’s direction, the Order proposed by you constitutes an omnibus release pertaining to the matters far beyond the issue of service charges. Unless the Order is modified to pertain only to the issue of service charges, the matter cannot be resolved ...
App. at 422. Oneida successfully secured exclusion of the release. Thereafter, Oneida’s insistence on preserving any claims it might have never wavered, and culminated in Article XII of the reorganization plan itself:
All claims and causes of action in favor of [Oneida] not expressly released or terminated in accordance with the Plan are hereby preserved and may be prosecuted by [Oneida] or the Creditors’ Committee after entry of the Confirmation Order.
App. at 146.
Thus, Oneida never assumed a position which its current actions repudiate. Compare Scarano v. Central R. Co. of New Jersey, 203 F.2d 510, 513 (3d Cir.1953); In re Galerie Des Monnaies of Geneva Ltd., 55 B.R. 253 (Bankr.S.D.N.Y.1985), aff'd 62 B.R. 224 (S.D.N.Y.1986) (debtor had affirmatively stated a belief it did not have preference actions, and would have been the only beneficiary of actions ultimately brought after bankruptcy). Nor has the bank pointed to any persuasive evidence that it was prejudiced by anything Oneida did or did not do during the bankruptcy *424 proceeding.[8]
In sum, equitable and judicial estoppel are extraordinary remedies to be invoked when a party’s inconsistent behavior will otherwise result in a miscarriage of justice. Oneida’s behavior was neither inconsistent nor inequitable. Accordingly, I believe that the court should not have applied es-toppel doctrines to this case.
III.
For the foregoing reasons, I would reverse the judgment of the district court.

. Rule 13(a) states that: “A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurence that is the subject matter of the opposing party’s claim ...”

. The absence of such a rule is consistent with § 553, the Code’s setoff provision. Section 553 permits a creditor to exercise a right of setoff, but does not require the creditor to do so. The absence of such a rule also is consistent with our recent decision in Paradise Hotel Corp. v. Bank of Nova Scotia, 842 F.2d 47 (3d Cir.1988), where we held that a debtor who believes that an involuntary bankruptcy proceeding was filed against it in bad faith may pursue its remedies after bankruptcy, rather than relying exclusively on the relief provided by the Code in § 303(i)(2).

.Article XII is quoted, infra, at 423.

. In two cases cited by the court, Southmark Properties v. Charles House Corp., 742 F.2d 862, 871 (5th Cir.1984) and County Fuel Co. v. Equitable Bank Corp., 832 F.2d 290 (4th Cir.1987), courts of appeal held that claims were barred by claim preclusion in contexts where granting relief would have been inconsistent with findings of fact or conclusions of law supporting the judgment in a prior case or would have effectively rescinded relief granted in a prior case. Both holdings are supported by the principle set forth in § 22(2)(b). In Southmark, the debtor sought to collaterally attack an order authorizing and confirming a sale of property to the debtor’s mortgagee. In County Fuel Co., the debtor attempted to raise claims that, had they been successfully raised when the creditor moved for removal of the automatic stay, would have caused the court to reject the motion.

. There is not even a significant overlap of the evidence crucial to the motions decided in the bankruptcy court and the evidence necessary to an analysis of Oneida’s current claims. The bankruptcy court’s determinations required consideration of the credit agreement, the value of the lien on Oneida’s property and accounts receivable, and the question whether the bank properly perfected its liens. Oneida's current claims on the other hand, would necessitate investigation of the bank’s behavior immediately prior to Oneida’s filing in Chapter 11. With the exception of the credit agreement itself, the evidence adduced in the bankruptcy court would likely be irrelevant to this investigation.

. At oral argument, we were advised that the Creditor’s Committee had concurred in Oneida’s decision to pursue its claims against the bank and that an application had been made to the bankruptcy court for a plan amendment that would provide for creditor participation in any recovery.

. Oneida’s disclosure statement charged the bank with:
Unilaterally withdrawing] Four Hundred Fifty Thousand Dollars ($450,000) from the Debtor’s operating account to be applied towards satisfaction of the Dorn’s settlement
and claimed that
Said overdraft caused an immediate overdraft in the Debtor’s account, which became a chronic situation until the filing of the bankruptcy proceedings.
App. at 109.

. The court maintains that, had the bank known about Oneida’s claims, it might not have entered into a stipulation as to the extent and validity of its lien, or voted for confirmation. I find it difficult to believe the bank was prejudiced in these respects, when undisputed evidence indicates that the bank was essentially paid in full by Oneida's plan. The bank’s consent to the use of some of its cash collateral came prior to the filing of Oneida’s statements of assets and liabilities and its disclosure statement and could not have been influenced thereby.